664 So.2d 170 (1995)
William FULTON
v.
ROBINSON INDUSTRIES, INC.
No. 92-CA-00446-SCT.
Supreme Court of Mississippi.
September 14, 1995.
Rehearing Denied November 22, 1995.
*171 George T. Holmes, Jackson, for appellant.
Robert P. Thompson, Copeland Cook Taylor & Bush, Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
William Fulton appeals to this Court from Circuit Court of the First Judicial District of Hinds County which granted Robinson Industries' motion for a directed verdict at the conclusion of Fulton's presentation to the jury of his case in chief. Robinson Industries [hereinafter Robinson], was the owner of a McDonald's restaurant located on I-55 North, in Jackson. Fulton slipped and fell on the accumulated ice and snow in the parking lot of the restaurant. The circuit court reasoned that defendant met its duty of reasonable care to keep the premises safe or warn of a hidden danger based upon the ice, snow, slush, or ice under ice, being an open and obvious danger and requiring no warning. Fulton's subsequent motion for a new trial was also denied.
Aggrieved, Fulton raises the sole issue that it was error for the lower court to grant a motion for directed verdict. After thoroughly reviewing the record, this Court finds no error in granting the motion for a directed verdict in light of the facts presented in the lower court. Moreover, after thoroughly reviewing the case law on slip and falls, and the open and obvious doctrine abolished by this Court in Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994), we find that the open and obvious defense cannot be applied. While it cannot be said that Fulton was not being careful, nevertheless, he was 100% responsible for his own injuries suffered during a slip and fall which clearly was a mere accident. The natural condition of snow and ice on the restaurant parking lot and Robinson's non-removal of same did not constitute any negligence by Robinson, under the facts of this case.

FACTS
The City of Jackson had been blanketed by snowfall during the dates of January 6, 1988, to January 8, 1988. On the brisk morning of January 8, 1988, William Fulton [hereinafter Fulton], and his mother, Ruby Fulton [hereinafter Mrs. Fulton], arranged to meet the brother, Jake Fulton [hereinafter Jake], at the McDonald's restaurant located at 4710 I-55 North, Jackson. Fulton parked his pickup truck, with Jake pulling up alongside him. Upon arrival, the entire group noticed that the parking lot was covered in snow, some of which was flattened by tire tracks from patron ingress and egress. All three parties knew that the grounds at both the McDonald's parking lot and the rest of the City were covered in snow, slush, ice and sleet.
Mrs. Fulton exited Fulton's truck, and son Jake aided her in their joint walk across the *172 open parking lot toward the restaurant. Fulton walked with a permanent limp, due to a prior accident, and thus followed behind cautiously. In the middle of the parking lot, Fulton slipped, fell on the ice, and hit his head. The family turned around to discover that Fulton had fallen and was bleeding. Fulton was rushed to St. Dominic's Emergency Room where he received treatment.

STANDARD OF REVIEW
On review of a decision on a motion for directed verdict, the Supreme Court must consider the evidence in the same light as the trial court. Wirtz v. Switzer, 586 So.2d 775 (Miss. 1991). Thus, this Court must review the circuit court's holding de novo.

DISCUSSION OF LAW

WHETHER THE CIRCUIT ERRED IN GRANTING ROBINSON'S MOTION FOR A DIRECTED VERDICT?
This Court has stated as a general rule:
[i]n deciding if the motion for directed verdict on the issue of individual liability was due to be granted, the trial court must view the evidence most favorably to the non-moving party, and if by any reasonable interpretation, it can support an inference of individual liability which the non-moving party seeks to prove, the motion must be denied. (citation omitted). We take a like view of the evidence when considering on appeal the charge that the Circuit Court erred in directing a verdict.
Turner v. Wilson, 620 So.2d 545, 550-51 (Miss. 1993) (citation omitted).
When a motion for directed verdict is made and granted at the close of the plaintiff's case-in-chief, such is proper if the plaintiff's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party. Tate v. Southern Jitney Jungle, 650 So.2d 1347, 1349-50 (Miss. 1995).
In this case sub judice, the thrust of Fulton's argument is that even though he knew the parking lot was covered in slush, snow, and ice, nevertheless, when he stepped on a patch of soft slush, there must have been a hidden layer of slippery hard ice underneath, which caused him to slip and fall. Robinson's defense is that it was so obvious to Fulton that the ground was covered with ice, that regardless of the form or consistency of the ice, it was open and obvious and required no warning.
The trial court granted a directed verdict for the Robinson using this logic:
Premise 1: The defendant, as a commercial
 business, had a duty to
 the plaintiff, a business invitee,
 to exercise reasonable
 care to keep the premises in
 a reasonably safe condition
 or to warn of a hidden danger.
Premise 2: The snow, sleet, and slush
 were open and obvious to all
 in plaintiff's party.
Conclusion: Thus, by virtue of the fact
 that the danger was open
 and obvious and that the incident
 happened outside as
 opposed to inside, defendant
 met its duty of reasonable
 care.
Since the time of the lower court's ruling, great changes in the law have taken place on the application of the open and obvious doctrine. In Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994), this Court decided to abolish the "open and obvious" defense by holding that if the "defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages [could] be determined through the comparative negligence of both." Id. at 24. In essence, we stripped the open and obvious standard to be just another comparative negligence concept used to compare the negligence of the plaintiff to the negligence of the defendant. Id. at 25.
Other recent cases have solidified Tharp's impact. In Tate v. Southern Jitney Jungle Co., 650 So.2d 1347 (Miss. 1995), this Court concluded that a deli counter upon which the plaintiff had injured her knee may be found to be unreasonably dangerous and, if so, the fact that it was readily observable, or "open and obvious," is but a fact to be considered by the jury in assessing damages under our comparative fault doctrine. Id. at 1347-48.
*173 In Baptiste v. Jitney Jungle, 651 So.2d 1063 (Miss. 1995), this Court held that a genuine issue of fact was presented where a delivery man who had known that debris piles existed on the loading dock had injured himself by tripping over such debris on one of his unloading rounds. The lower court's summary judgment was reversed by applying the new standards of Tharp.
In Downs v. Choo, 656 So.2d 84 (Miss. 1995), a customer fell on a darkened banana peel. Since "[t]here was a dispute as to the timely and non-negligent removal of the banana from the produce bin by the store's employee," the trial court was held to have erred in granting a summary judgment. Id. at 86. The Downs majority also reaffirmed Tharp and held that the open and obvious doctrine was not a complete defense where the "condition complained of was unreasonably dangerous." Id. at 87, citing Tate v. Southern Jitney Jungle Co., 650 So.2d 1347, 1351 (Miss. 1995).
In light of Tharp and its progeny, at first glance it would appear that perhaps this case should be remanded and the motion for a directed verdict reversed. However, a closer look at the entire body of case law on slip and fall, and the abolished open and obvious doctrine reveals that this Court must affirm the motion for directed verdict based solely on the facts indicating no negligence whatsoever by Robinson.
To reach this conclusion, a study of slip and fall due to natural conditions is appropriate at this juncture. In Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646, 648 (Miss. 1988), accumulated ice at the defendant's Greenwood business caused plaintiff, a licensee, to fall. The Delta area had been "struck by a vicious winter storm" that year. Id. at 647. Lucas basically arrived at defendant's business, walked "across the lot toward the service area, ... [and w]hen she reached the freight ramp, she slipped and fell on ice that had accumulated during the storm, injuring her arm." Id.
The trial court granted summary judgment for defendant, and this Court affirmed, stating that even if Lucas were an invitee, the defendant still "would have only owed her the duty of exercising reasonable care to keep the premises safe, ... and the ice which caused Lucas to fall was in no way hidden or concealed." Id. at 648. Stated in the alternative, this statement means that a business does not need to clear off any fallen snow in its parking lot well away from the immediate surrounding entrance or exit of the physical building in order to be exercising reasonable care. Moreover, Robinson had exercised reasonable care to keep its restaurant premises safe since the law does not require it to clear the snow off its parking lot.
Another point to sharpen is that the Lucas incident happened as she approached the freight entrance ramp. Though this Court never engaged in a dialogue about whether Buddy Jones Ford would be liable or a jury question would be created had this incident occurred on the ramp or some other physically adjacent part of the building, it is important to note that both Lucas and Fulton did not have close proximity to the actual building when their respective slips and falls occurred.
In City of Baldwyn v. Rowan, 232 So.2d 157 (Miss. 1970), this Court found that a jury question was created as to whether the City was negligent in failing to eliminate a hazard when a pedestrian slipped and fell on a thin layer of ice which had been created because the city for years had allowed water to continually drain across the sidewalk and ramp on which the plaintiff fell. Rowan's applicability to the case at bar is severely limited since Robinson neither created the ice on its parking lot, nor allowed water to drain off to create a slippery sheet of ice. Moreover, we cautioned that "ice and sleet on an inclined street is by its nature dangerous and the city would ordinarily not be liable for damages sustained when one slips thereon." Id. at 160. Likewise, the ice in the parking lot also has the potential to be dangerous, and slips thereon should not be charged to Robinson, especially in view of the fact that the parking lot was a flat surface.
In Johnson v. Boydston, 605 So.2d 727 (Miss. 1992), the plaintiff slipped and fell due to the sleet on an entrance staircase. The trial court had granted a summary judgment *174 to the defendant hotel. This Court reversed. The facts of Johnson tell that invitees could only enter or exit the building through one pathway. Id. at 727. Johnson had no choice but to use the steps. On one of the steps, there was a sheet of ice that had formed from water dripping off of the roof of the building onto that step. Johnson fell due to this sheet of ice.
Johnson is also distinguishable from the facts at bar. In Johnson, the snow was on the entrance staircase. It is reasonable to expect that a business owner could monitor the safety and condition of his stairs and any other physically adjacent parts of the building. Id. at 729-30. Here, Fulton did not fall at the entrance of McDonald's. He fell on a distant parking lot due to naturally accumulated snow, ice and sleet. Neither are we confronted with the roof design of McDonald's causing accumulation from water spilling off and freezing, thereby creating a danger to customers, as in Johnson. Thus, just because the summary judgment of the Johnson trial court was reversed for a full evidentiary trial, does not require that Robinson's motion for a directed verdict be reversed.
In Goodwin v. Derryberry Co., 553 So.2d 40 (Miss. 1989), the appellant slipped and fell on the ice covering the pathway at the defendant's store. Here also, for several days prior to this incident, that entire region had experienced severe winter weather. Id. at 41. Upon arrival at Derryberry's store, Goodwin parked his truck on the street, in front of a private driveway adjacent to the business. The driveway was not the same thing as a parking lot, because the facts of Goodwin reveal that "on the north side of the building was a driveway leading to a parking area." Id. In any event, Goodwin walked up this inclined pathway toward the store as the flow of customer traffic was expected to come. Upon leaving the store to return to his truck for an item, Goodwin slipped and fell flat on his back on this slanted path.
The Goodwin trial judge had adequately instructed the jury regarding comparative negligence, and the jury decided to award the plaintiff damages. However, the trial court granted a subsequent motion for a judgment notwithstanding the verdict for the defendant. We held that the evidence created a jury question on whether the store owner exercised reasonable care to keep the premises in a reasonably safe condition. Id. at 43. The Court reasoned that:
[i]n this case, not only was the jury adequately instructed regarding comparative negligence, ... but the trial judge also granted a peremptory instruction that ... Goodwin was negligent... . Under the circumstances, we do not believe that the trial judge should have upset the jury's verdict. [Also], the uncontradicted evidence (appellee did not offer any evidence at trial) was sufficient to support a verdict in favor of the appellant Goodwin. Therefore, it was error for the trial judge to grant the appellee's motion for judgment notwithstanding the verdict.
Id. at 43-44. From this quote, it is obvious that Goodwin has limited application to Fulton's case.
In the case at bar, neither Mrs. Fulton nor Jake ever reached the entrance of McDonald's, and since Fulton himself was even further behind them, he was nowhere near or in close proximity to either entrance of the restaurant. It is important to distinguish between Fulton whose location was remote in relation to McDonald's restaurant, and Goodwin who was in close proximity to Derryberry's store, when the litigated incidents in question occurred. Moreover, Fulton slipped on flat land, whereas, Goodwin at least had to contend with a slippery inclined path.
In Goodwin, it was reasonable to expect that a business would maintain its immediate surroundings, especially where it is usual for business invitee traffic to occur. Goodwin, out of a lack of an alternative route, was compelled to cross the same inclined pathway each time. Here, there is no way for a restaurant like McDonald's to anticipate/expect which direction/route an invitee situated out in a parking lot may choose to come when entering the restaurant.
This Court has recently reamplified this line of thinking by acknowledging that there is a difference between dangers which are "usual and which customers normally expect *175 to encounter on the business premises, ... [and] claimed physical defect[s] on the defendant's premises ... which may be found to be unusual and unreasonably dangerous." Tate, 650 So.2d at 1351 (Miss. 1995) (emphasis added). Though Tate did not deal with a natural, God-made condition, the Court, in holding that a Jitney Jungle counter into which the plaintiff collided and injured herself constituted a jury question, said of the artifice that, "[i]t does not appear to be a condition that one would normally encounter... . [T]here is, at a minimum, a jury question of Jitney failing to maintain the premises in a reasonably safe condition." Id.
Likewise, when dealing with potentially dangerous natural conditions, this Court chooses to look at the natural condition in terms of what the customer can "normally encounter" or "expect," coupled with an examination of whether the condition is "unusual" or "usual" in order to determine whether a jury question exists. In that light, it can still be said that because it was the winter season, McDonald's parking lot was covered with snow, sleet, slush, and ice, a "normal" and "usual" condition which Fulton can "expect to encounter." Thus, there is no jury question because there is an absence of any negligence by Robinson.
What emerges from the combination of these "slip and fall on snow" cases and the progeny of Tharp is this law. An owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care. Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss. 1988). The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance. Tate, 650 So.2d at 1351.
It is important to restate this law because it may have been forgotten in the aftermath of Tharp. The law still revolves around what the owner can "anticipate" or "expect," or what is "usual." Tharp, 641 So.2d at 24. There is no way for Robinson to anticipate from which direction a customer will be coming on the parking lot. This Court will not require Robinson to clear off the entire parking lot following an ice storm, or on a much larger scale, Northpark Mall to clear off its vast acres of parking space. Common sense must occasionally prevail and this case absolutely mandates common sense application.
The entire body of slip and fall case law combined with this Court's latest pronouncements on the open and obvious doctrine can be summed up in these black letter conclusions:
(1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger. Goodwin v. Derryberry Co., 553 So.2d 40 (Miss. 1989).
(2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question. Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646 (Miss. 1988).
(3) if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger. Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994); Tate v. Southern Jitney Jungle, 650 So.2d 1347 (Miss. 1995); Baptiste v. Jitney Jungle, 651 So.2d 1063 (Miss. 1995); Downs v. Choo, 656 So.2d 84 (Miss. 1995).
The facts of this case fall squarely within the framework of Lucas and Jerry Lee's Grocery, Inc. We find that Fulton was injured on a remote part of the business premises (the parking lot), and that his fall was due solely to his own actions in walking on snow and ice, a God-made condition of which he was fully aware. Therefore, there was no negligence by Robinson and no question for the jury to consider in this case.
This Court has previously held, "[j]ust how open and obvious a condition may have been *176 is a question for the jury, in all except the clearest of cases." Bell v. City of Bay St. Louis, 467 So.2d 657, 664 (Miss. 1985). In Mercy Regional Medical Center v. Doiron, 348 So.2d 243, 246 (Miss. 1977), this Court acknowledged that "an injury could belong to a class of ordinary accidents which are properly imputed to the carelessness or the misfortune of the one injured." The case sub judice is one of those clearest cases. The record reveals that Fulton was being cautious in his walk across the snow covered parking lot. Nonetheless, he fell. Snow can be very tricky when a person is walking upon it. Though Fulton's fall may not have been due to carelessness on his part, neither was his fall due to any lack of reasonable care on the part of Robinson. This incident must be chalked up to the sheer misfortune of the one injured, an accident, pure and simple.
Even in Tharp, 641 So.2d at 23, this Court recognized that "[f]or the open and obvious defense to be a complete bar to a negligence claim, the plaintiff must be one hundred percent (100%) negligent himself." This Court held that if the "defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages can be determined through the comparative negligence of both." Id. at 24. Returning to the case at bar, since there is no fault whatsoever on the part of Robinson, you do not get to true comparative negligence principles.
In light of the above discussion, this Court must still decide whether the motion for a directed verdict was proper in the present instance. In deciding if the motion for directed verdict on the issue of individual liability was properly granted, we must view the evidence most favorably to the non-moving party, and if by any reasonable interpretation, it can support an inference of individual liability which the non-moving party seeks to prove, the motion must be denied. Turner v. Wilson, 620 So.2d 545, 550-51 (Miss. 1993). This Court need only answer whether the evidence most favorably viewed will support an inference of liability for Robinson, i.e. is Fulton's evidence so lacking that reasonable jurors would be unable to reach a verdict in his favor?
The answer is quite clear. It was not unusual for the snow to be in the parking lot given the time of the year and the weather conditions. Robinson did not create this snow. Fulton, his mother, and his brother witnessed the snow, the slush, the sleet, and the ice on the ground. Fulton fell because he accidentally slipped on the snow. Fulton fell in the parking lot, quite a distance away from McDonald's entrance. Fulton's evidence is so totally lacking that a reasonable juror could not reach a verdict in favor of Fulton and against Robinson. The novel argument by Fulton's counsel of ice hidden beneath the ice, albeit highly creative, nevertheless is strictly speculative and does not constitute a reasonable interpretation that can support an inference of liability. Ice is ice, and ice is very slippery. There is no negligence whatsoever by Robinson, hence no jury question.

CONCLUSION
The trial court reached the right result, but for the wrong reason. However, in fairness to the trial judge, he could not have realized that this Court would abolish the open and obvious doctrine in Tharp. The facts of this case are determinative of the proper outcome of a directed verdict in favor of Robinson. Although he was being careful, Fulton's fall was clearly an accident. There is nothing in the record to indicate that Robinson failed to exercise reasonable care. Hence, there was no negligence whatsoever and you do not apply true comparative negligence principles. No jury question exists. The directed verdict by the trial court was proper. We must affirm the trial court.
JUDGMENT AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, and JAMES L. ROBERTS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.