# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00964-SCT

*ANTON FOSTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/15/2004 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD B. LEWIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. Anton Foster was convicted and sentenced in the Circuit Court of Coahoma County, Mississippi, for Count I armed robbery and Count II attempted aggravated assault. The trial court denied Foster's motion for judgment non obstante verdicto or alternatively for a new trial. On appeal, Foster contends the trial court erred in (1) denying his motion for directed verdict and motion for judgment notwithstanding the verdict (J.N.O.V.), or alternatively, motion for a new trial and (2) allowing a rebuttal witness to testify.

## FACTS

¶2.    Percy Dukes testified that, on the night of May 15, 2003, he went to a friend's home in Friar's Point to repay a personal loan of $10. Dukes's friend, "Little Woods," was not at home. Dukes encountered Foster who asked him for a ride "uptown." Dukes gave Foster a ride. Dukes went into Willie's Food and Games, a local club, where he shot a couple of games of pool. When Foster got out of the car, Dukes did not see where he went. As Dukes left the club, he saw Foster outside. Dukes estimated that it was between 10:30 p.m. and 11:00 p.m. Foster asked Dukes for another ride.

¶3.    Foster asked for a ride back to his mother's house. Dukes testified that he allowed Foster to ride back with him since he was going back that direction to see if Woods was home. Foster got out and left. Dukes went to Woods's house. Dukes's friend still had not made it back home. As Dukes began to leave, he noticed that his tire had gone flat. Dukes turned around in Woods's yard and squatted down to change the flat tire.

¶4.    Foster called Dukes's name from the road and waved a gun and paced up and down the road. Foster asked Dukes if he had any money and told Dukes to empty his pockets. Dukes pulled out his billfold and laid it on the hood of the car. Foster went through the billfold and gave it back. He then searched through Dukes's car.

¶5.    Foster told Dukes to leave his car and catch a ride with Reggie Robinson. Robinson had pulled up behind Dukes's car and allowed him to use his lug wrench. Robinson went back to his truck. When Dukes said he was not going to leave his car, Foster told him that he was not kidding and that he would break out all of the car's windows.

¶6. When Foster bent down to pick up something, Dukes jumped inside his car and drove off. Foster began shooting at Dukes and the car. Dukes testified that Foster shot five or six times at the car. Shots hit the car causing Dukes to be cut by broken glass.

¶7. Dukes testified that he went to the home of his friend, Linda Chatman, and he called the police. The police arrived and transported Dukes to the police station. Dukes's wife came and took him home. Dukes subsequently identified Foster as the assailant at an "in person" lineup at the Coahoma County Sheriff's Department. At trial, Dukes also identified Foster for the record as the man he had been referring to in his testimony that robbed him and shot at him.

¶8. Robinson testified that he came upon Dukes beside the road. Dukes was alone. Robinson left to go home and get a lug wrench. When he returned, two men where there. Robinson got out of his truck and offered to help. The men were exchanging words while he operated the lug wrench. Robinson testified that he became concerned and told Dukes he could have the wrench and headed back to his truck. Robinson saw someone pointing a gun. He testified that he left and heard shots fired as he was leaving. Robinson could not positively state whether the other man was Foster or not.

¶9. Joshua Brady testified that on May 15, 2003, he saw fire coming from a gun and saw a car coming around the block. At trial, Brady recanted his statement given to the police. He testified that he never told the police that he saw Foster with a gun. After further questioning, Brady did admit that he told the police that he saw Foster with a gun. However, he testified that he had lied. Brady who was age fifteen at the time of trial testified that he was told that he would not have to go to training school if he named Foster. Brady testified that he was facing a burglary charge. Brady testified that he went to training school anyway.

¶10.   Roosevelt Pryor testified as Foster's only alibi witness.  He testified that on the evening of May15, 2003, he was with Foster.  According to Pryor, he and Foster along with two other individuals were at Club Max in Clarksdale from 8:30 p.m. to 12:30 a.m. and did not return to Frair's Point until 12:45 a.m.  They never went inside the club.  Pryor testified that he heard Foster had turned himself in and was arrested.  He knew Foster was in jail.  On cross-examination, Pryor admitted that he never contacted the authorities when Foster was arrested.  Pryor never came forward to inform the police that Foster could not have done the alleged crimes as he was with him that evening.

¶11.   Foster testified that he sat outside Club Max with Pryor, Kavin Barnard and Steve Magsby on May 15, 2003.  According to Foster, they left the Max at "12-something."  Foster testified that he went home and went nowhere else.

**DISCUSSION**

**I.     Motion for J.N.O.V., or Alternatively, Motion for a New Trial**

¶12.   Foster moved for a directed verdict at the close of the State's case-in-chief.  The trial court denied Foster's motion.  Foster also made a post-trial motion for judgment notwithstanding the verdict, or alternatively, motion for a new trial, and the trial court also denied that motion.

¶13.   The standard of review for a denial of a directed verdict and a motion for a judgment notwithstanding the verdict is the same. *Steele v. Inn of Vicksburg, Inc.,* 697 So.2d 373, 376 (Miss. 1997).  We employ de novo review of a trial court's decision regarding a motion for directed verdict. *Fulton v. Robinson Indus., Inc.,* 664 So.2d 170, 172 (Miss. 1995).  As such,

4

we examine the evidence in the record in the same light as the trial court. *Id.* We consider the record at the last time the trial court had the issue before it here, on the motion for J.N.O.V.

¶14. Denials of peremptory instructions, motions for directed verdict and motions for judgment notwithstanding the verdict each challenge the legal sufficiency of the evidence presented at trial and each are reviewed under the same standard. ***Community Bank v. Courtney,*** 884 So. 2d 767, 772 (Miss. 2004). This Court has held that under its standard of review, denial must be reviewed as follows:

> This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered points so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Id.*

¶15. Foster argues that the trial court erred in denying of his motion for J.N.O.V., or in the alternative, for a new trial since the verdict was against the overwhelming weight of the evidence. This Court has made a distinction between the review of the denial of a motion for J.N.O.V. based on the legal sufficiency of the evidence and review of a motion for new trial based on the weight of the evidence.

A.     *Legal Sufficiency*

¶16. Foster was convicted of armed robbery (Count I) and aggravated assault (Count II). Miss. Code Ann. § 97-3-79 defines robbery with use of a deadly weapon as:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by

violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery...

Miss. Code Ann. § 97-3-7(2) sets forth the elements of aggravated assault. The statute states, in part:

> A person is guilty of aggravated assault if he *(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;* or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...

(emphasis added).

¶17. On the issue of the legal sufficiency of the evidence, this Court held in *Pinkney v. State,* 538 So.2d 329, 353 (Miss. 1988), *vacated on other grounds*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), that reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair minded jurors could only find the accused not guilty." (quoting *Wetz v. State,* 503 So.2d 803, 808 (Miss. 1987)). A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State,* 625 So.2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id.* at 778. Here, this occurred when the trial court denied Foster's motion for J.N.O.V. *See id.*

¶18. In the case sub judice, the State proved the elements of armed robbery and attempted aggravated assault against Foster. In his testimony, Dukes identified Foster as the individual that robbed him at gunpoint and fired at him shooting his car several times with him inside the car. Dukes testified that he on two occasions that evening had given Foster a ride. Dukes testified that Foster ordered him at gunpoint to give him his billfold and searched through his car hunting

6

anything of value. He ordered Dukes to leave his car. Dukes testified that he was scared for his life. When Foster bent down, Dukes jumped into his car and drove away. Foster repeatedly shot at him as he left. Dukes did not know Foster's name, but he identified him from a lineup.

¶19. Robinson's testimony confirmed that Dukes had a flat tire, and there was an exchange between Dukes and another individual. Robinson testified that he became scared and left. As he left, he heard gunshots. The evidence demonstrates that the elements of armed robbery and attempted aggravated assault were met in this case.

### B. Weight of the Evidence

¶20. A motion for new trial challenges the weight of the evidence. *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id.*

¶21. The Court weighs the evidence in the light that is most favorable to the jury verdict. *Bush v. State,* 895 So. 2d 836, 844 (Miss. 2005). This Court has held that a new trial will not be given unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose v. State,* 440 So.2d 297, 300 (Miss. 1983). However, if a jury verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial. *Collier v. State,* 711 So.2d 458, 461 (Miss. 1998).

¶22. In the case sub judice, the verdict is consistent with the weight of the evidence, and no new trial is warranted. The jury heard the testimony from all the witnesses and heard Foster's alibi defense. The victim clearly identified Foster and described what occurred. The jury rejected the defense and found Foster guilty of armed robbery and attempted aggravated assault.

¶23.    We find that this assignment of error without merit.

## II.    Rebuttal Witness

¶24.    The State informed the trial court that Officer Shirley Johnson would be called as a witness in rebuttal.   Foster objected.   The trial court heard the objection outside the presence of the jury.   The defense based its objection on the fact that the jury was not voir dired as to Officer Johnson.

¶25.    In *McGaughy v. State*, 742 So.2d 1091, 1094-95 (Miss. 1999), this Court stated:

> This Court has advocated a liberal application of the rebuttal evidence rule. *See Powell v. State*, 662 So.2d 1095, 1099 (Miss.1995) (citing *Meeks v. State*, 604 So.2d 748, 755 (Miss.1992)). The time and manner of introducing evidence is committed to the sound discretion of the trial judge. *Deas v. Andrews*, 411 So.2d 1286, 1291 (Miss.1982) (citing *Winterton v. Illinois Cent. R.R.*,73 Miss. 831, 836, 20 So. 157, 158 (1896)). This Court will not reverse unless the exercise of discretion appears arbitrary, capricious or unjust. *Id.*

*See Wash v. State*, 880 So.2d 1054, 1056 (Miss. Ct. App. 2004).   In *Wash*, the Court of Appeals recently addressed this issue citing *McGaughy v. State*, 742 So.2d at 1093.  The Court of Appeals held:  "We consider whether the trial judge abused his discretion in allowing rebuttal testimony.   The decision to allow rebuttal evidence or testimony is at the sole discretion of the trial judge."

*Wash*, 880 So.2d at 1056.   Therefore, on appeal, this Court reviews the trial court's ruling only for an abuse of discretion.

¶26.    The trial court inquired from the State whether it had anticipated calling Officer Johnson as a witness.   The State informed the trial court that Officer Johnson was "absolutely" not expected to testify.   The State responded that after speaking with Officer Johnson, it was determined that her testimony would have been repetitious and only operate to delay the

proceedings and overlap the other officers' testimony. However, the State did not anticipate that two witnesses would make accusations that Officer Johnson had made improper inducements. When the State questioned Officer Johnson on rebuttal, the questioning was limited to only any deals that she allegedly made with Robinson and Brady.

¶27. We find that the record does not reflect that the trial court abused its discretion. Therefore, this assignment of error is without merit.

## CONCLUSION

¶28. For the foregoing reasons, we affirm the judgment of the Coahoma County Circuit Court.

¶29. **COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF ATTEMPTED AGGRAVATED ASSAULT AND SENTENCE OF FIVE (5) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. AFTER APPELLANT HAS SERVED TEN (10) YEARS IN COUNT I AND FIVE (5) YEARS IN COUNT II, THE REMAINING FIVE (5) YEARS IN COUNT I SHALL BE SUSPENDED. APPELLANT SHALL RECEIVE CREDIT FOR ALL TIME PREVIOUSLY SERVED IN THIS CAUSE. THE SENTENCE IMPOSED IN COUNT II SHALL RUN CONCURRENTLY TO THAT IMPOSED IN COUNT I AND BOTH SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**