MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. After falling on accumulated ice and snow in a grocery store parking lot, Charles Blanton filed a premises liability action in the Circuit Court of Alcorn County against Gardner’s Supermarket d/b/a Roger’s Supermarket (Roger’s). Roger’s claimed Blanton’s injuries were caused by a natural condition in a remote area of the premises and moved for summary judgment, which the circuit court granted.
 

 ¶ 2. Blanton now appeals, claiming summary judgment was improper because: (1) an artificial rather than natural condition caused his fall, and (2) the parking lot was defectively designed. We find no genuine issue of material fact and affirm.
 

 FACTS
 

 ¶ 3. On December 22, 2004, a winter storm with freezing temperatures covered much of Corinth, Mississippi, in ice and snow. Early the next morning, Blanton and his wife, Sandra Kay Robinson, began their newspaper-delivery route.
 

 ¶ 4. Blanton delivered newspapers to Roger’s around 6:00 a.m. As they continued to carry out their deliveries, Blanton’s wife observed that the parking lot and roads were “just getting slicker.” After finishing the paper route, Blanton returned to Roger’s to purchase a few items. He noticed Roger’s parking lot was covered with “approximately an inch, inch and a half of snow.” He parked his vehicle and walked across the parking lot.
 

 ¶ 5. When Blanton entered the store, Mark Gardner, the store’s vice-president, was using a flat hoe and shovel to clear ice and snow near the store’s main entrance. The ice was approximately a half-inch thick. Blanton remembered that he probably commented about store employees “scraping ice and stuff’ and that they “had their work cut out.” As he returned to his car, Blanton slipped and fell on ice and snow approximately five or six feet from the rear of his vehicle. His fall occurred in the parking lot approximately forty-eight feet from the entrance to Roger’s.
 

 ¶ 6. Blanton suffered a broken leg and filed a premises liability action against Roger’s. Roger’s moved for summary judgment, which the circuit court granted.
 

 STANDARD OF REVIEW
 

 ¶ 7. The grant or denial of summary judgment is reviewed de novo.
 
 Lawrence v. Wright,
 
 922 So.2d 1, 2 (¶ 5) (Miss.Ct.App.2004) (citing
 
 Hardy v. Brock,
 
 826 So.2d 71, 74 (¶ 14) (Miss.2002)). In conducting this review, the Court considers all evidentiary matters including admissions in pleadings, answers to interrogatories, depositions, and affidavits.
 
 Id.
 
 (citing
 
 Lee v. Golden Triangle Planning & Dev. Dist., Inc.,
 
 797 So.2d 845, 847 (¶ 5) (Miss.2001)).
 

 ¶ 8. When a motion for summary judgment is made and supported, “an adverse party may not rest upon the mere allegations or denials of his pleadings, but his
 
 *1226
 
 response, by affidavits or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). To survive summary judgment, the non-movant must offer “significant probative evidence demonstrating the existence of a triable issue of fact.”
 
 Byrne v. Wal-Mart Stores, Inc.,
 
 877 So.2d 462, 465 (¶ 3) (Miss.Ct.App.2003) (citing
 
 Young v. Wendy’s Int'l, Inc.,
 
 840 So.2d 782, 784 (¶5) (Miss.Ct.App.2003)).
 

 DISCUSSION
 

 ¶ 9. Blanton argues the circuit court erred by granting summary judgment in favor of Roger’s. Blanton first claims naturally occurring ice and snow did not cause his fall. Instead, he contends the supreme court’s decision in
 
 City of Baldwyn v. Rowan,
 
 232 So.2d 157 (Miss.1970), supports his argument that an “artificial condition” caused water to improperly drain, puddle and freeze in the area of his fall. He also claims for the first time on appeal that the parking lot’s defective design led to his injury.
 

 ¶ 10. Roger’s however maintains the circuit court properly found Blanton’s injury resulted from the natural accumulation of snow and ice in a remote location of the business premises, and thus argues summary judgment was proper under the natural-conditions rule and black-letter conclusions set forth by the supreme court in
 
 Fulton v. Robinson Indus., Inc.,
 
 664 So.2d 170, 175 (Miss.1995), and more recently applied by this Court in
 
 Lawrence,
 
 922 So.2d at 2 (¶ 6).
 

 I. Whether Roger’s Was Negligent A. Slip and Fall Cases and the Open and Obvious Doctrine
 

 ¶ 11. Prior to 1994, liability was not imposed on business owners if an invitee sustained an injury as a result of an open and obvious dangerous condition on the business’s premises.
 

 ¶ 12. However, in
 
 Tharp v. Bunge Corp.,
 
 641 So.2d 20 (Miss.1994), the supreme court abolished the “open and obvious” defense by holding that if the “defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages could be determined through the comparative negligence of both.”
 
 Fulton,
 
 664 So.2d at 172 (quoting
 
 Tharp,
 
 641 So.2d at 24). The supreme court essentially changed the open and obvious doctrine “to be just another comparative negligence concept used to compare the negligence of the plaintiff to the negligence of the defendant.”
 
 Id.
 
 (citing
 
 Tharp,
 
 641 So.2d at 25).
 

 ¶ 13. In
 
 Fulton,
 
 the supreme court reviewed several issues involving slip and falls on snow and ice and the progeny of
 
 Tharp
 
 and held that “[a]n owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care.”
 
 Id.
 
 at 175 (citing
 
 Jerry Lee’s Grocery, Inc. v. Thompson,
 
 528 So.2d 293, 295 (Miss.1988)). According to
 
 Fulton,
 
 invitees are “still required to use in the interest of [their] own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance.” Id. (citing Tate
 
 v. S. Jitney Jungle Co.,
 
 650 So.2d 1347, 1351 (Miss.1995)).
 

 ¶ 14. The supreme court further recognized that when addressing potentially dangerous natural conditions, Mississippi courts “look at the natural condition in terms of what the customer can ‘normally encounter’ or ‘expect,’ coupled with an examination of whether the condition is ‘unusual’ or ‘usual’ in order to determine
 
 *1227
 
 whether a jury question exists.”
 
 Id.
 
 Viewed in that context, the
 
 Fulton
 
 court reasoned “because it was the winter season,” the business’s “parking lot was covered with snow, sleet, slush, and ice.”
 
 Id.
 
 The supreme court found these were “ ‘normal’ and ‘usual’ conditions] which Fulton [could] ‘expect to encounter!,]’ ” and absent any negligence by the business, no jury question existed.
 
 Id.
 

 ¶ 15. The
 
 Fulton
 
 court found it important to restate Mississippi law in light of
 
 Tharp,
 
 noting that the entire body of slip and fall case law on the open and obvious doctrine can be summed up in these black-letter conclusions:
 

 (1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger.
 
 Goodwin v. Derryberry Co.,
 
 553 So.2d 40 (Miss.1989).
 

 (2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question.
 
 Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.,
 
 518 So.2d 646 (Miss.1988).
 

 (3) if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger.
 
 Tharp v. Bunge Corp.,
 
 641 So.2d 20 (Miss.1994);
 
 Tate v. S. Jitney Jungle,
 
 650 So.2d 1347 (Miss.1995);
 
 Baptiste v. Jitney Jungle,
 
 651 So.2d 1063 (Miss.1995);
 
 Downs v. Choo,
 
 656 So.2d 84 (Miss.1995).
 

 Fulton,
 
 664 So.2d at 175. Under the second black-letter conclusion, where the fall is due to a natural condition in a remote area and the defendant knows and appreciates the danger, there is no jury question as to the defendant’s negligence.
 
 Id.
 
 Roger’s argues the circuit court properly granted summary judgment under this rule.
 

 i. Natural and Artificial Conditions
 

 ¶ 16. Though Blanton recognizes the rules set forth in
 
 Fulton,
 
 he argues his injury did not stem from naturally occurring ice and snow. Instead, he claims water puddled and accumulated in a depression in the store’s parking lot, which then froze and created an “artificial condition” that caused him to fall. Therefore, he contends summary judgment was improper under the third black-letter conclusion in
 
 Fulton.
 
 To support this theory, he relies on
 
 Rowan,
 
 232 So.2d at 160, as well as his affidavit wherein he indicates he slipped on ice in a depression in the lot where water had drained, pooled and frozen. In addition, Blanton provides deposition testimony from a Roger’s employee, which he contends evidences the store’s notice of the condition and precludes summary judgment under general premises liability law.
 

 ¶ 17. We first address the condition leading to his injuries. In
 
 Rowan,
 
 the Mississippi Supreme Court affirmed a jury verdict in favor of lone Rowan, who had fallen on an isolated patch of ice on a sidewalk ramp in front of the Baldwyn City Hall.
 
 Id.
 
 at 158. On the morning Rowan fell, “water froze so as to cover a portion of the sidewalk and the ramp with a thin layer of ice[,] but there was no ice elsewhere on the streets or sidewalks.”
 
 Id.
 

 ¶ 18. The supreme court pointed out that water had drained from the alley and over the sidewalk for years. It further noted Rowan was the fourth or fifth per
 
 *1228
 
 son who had fallen on the ramp that morning and that:
 

 the streets and sidewalks were free of ice, except at the place where plaintiff fell.
 
 The isolated patch of ice where plaintiff fell was frozen water that drained from the alley. The source of this drain water was the alley which is more elevated than the sidewalk, or the plumbing in a building, or both. The condition could have been easily remedied.
 

 Id.
 
 at 159 (emphasis added).
 

 ¶ 19. The City of Baldwyn argued, among other defenses, that the case should have been dismissed because the presence of the ice was a natural condition. But the supreme court ultimately concluded, under the facts in
 
 Rowan,
 
 a jury question existed because “the jury had the right to find that
 
 an isolated patch of ice on the ramp would not necessarily be noticed by a person using due care.” Id.
 
 at 160 (emphasis added).
 

 ¶ 20. Though Mississippi courts have not squarely addressed what creates an unnatural or artificial accumulation of ice or snow, we draw instruction from the analysis used by the Supreme Court of Wyoming in
 
 Paulson v. Andicoechea,
 
 926 P.2d 955, 957-58 (Wyo.1996). In
 
 Paulson,
 
 the Wyoming court dealt with a slip and fall that occurred in an icy parking lot. The court held that in order to show an artificial condition existed, a plaintiff must prove the defendant created or aggravated the hazard, caused the hazard to be substantially more dangerous than it would have been in its natural state, and the defendant knew or should have known of the condition.
 
 Id.
 
 at 957 (citing
 
 Pullman v. Outzen,
 
 924 P.2d 416, 418 (Wyo.1996)). The court “stated that even the most ably constructed and carefully maintained parking lot will probably contain minor indentations in which naturally occurring water can accumulate and freeze; naturally occurring water which naturally concentrates in such a lot is still considered a natural condition.”
 
 Id.
 
 at 958 (citing
 
 Eiselein v. K-Mart, Inc.,
 
 868 P.2d 893, 898 (Wyo.1994)). We find the Wyoming court’s analysis falls in line with our supreme court’s requirement of proof of an affirmative act to create the artificial condition before liability results.
 
 See Martin v. Flanagan,
 
 818 So.2d 1124, 1127 (¶ 13) (Miss.2002) (“In the absence of proof of an
 
 affirmative act
 
 creating an artificial condition, [an] upper landowner cannot be liable for the damage allegedly caused by the diffusion of surface water.”).
 

 ¶21. In the case before us, the store employee testified a drain exists near a depression in the parking lot, but he did not testify that normal rainfall causes water to accumulate there, as will be discussed more thoroughly later. Furthermore, Blanton presented no evidence to show Roger’s committed an affirmative act or in any way created or aggravated the terrain in the area of his fall. Thus, there is no proof Roger’s caused this area to be any more perilous than the rest of the parking lot — the dangerousness of which, we find Blanton fully appreciated, as will also be discussed further. Accordingly, absent any affirmative act on the part of Roger’s, we conclude the accumulation of ice and snow in the store’s parking lot was a natural condition of the winter storm.
 

 ii. Immediately Adjacent vs. Remote
 

 ¶22. Our analysis next requires that we decide whether Blanton’s fall occurred adjacent to the store’s entrance/exit or in a remote area of the business’s premises.
 

 ¶ 23. The adjacent/remote distinction can be seen by comparing two decisions by our supreme court,
 
 Goodwin,
 
 553 So.2d at 41, and
 
 Fulton,
 
 664 So.2d at 172. In
 
 Goodwin,
 
 the plaintiff slipped on ice accu
 
 *1229
 
 mulated on a slanted pathway in close proximity to the defendant’s store, and the supreme court found it reasonable to expect the Derryberry Company to maintain its immediate surroundings where business invitees usually traveled.
 
 Goodwin,
 
 553 So.2d at 41. In
 
 Fulton,
 
 the plaintiff did not fall on a pathway adjacent to a business; instead he slipped on ice in a remote location' — the middle of a parking lot.
 
 Fulton,
 
 664 So.2d at 172.
 

 ¶ 24. The
 
 Fulton
 
 court distinguished falls caused by a natural condition occurring “immediately adjacent” to a business versus those happening in a “remote” location. Specifically, it found there was no way for the subject restaurant “to anticipate/expect which direction/route an invitee situated out in a parking lot may choose to come when entering a restaurant.”
 
 Id.
 
 at 174. The court further held that it “will not require [the business] to clear off the entire parking lot following an ice storm.”
 
 Id.
 
 at 175.
 

 ¶ 25. In
 
 Lawrence,,
 
 this court further addressed the supreme court’s distinctions between
 
 Goodwin
 
 and
 
 Fulton,
 
 noting:
 

 Fulton was injured on a remote part of the business premises (the parking lot), and that his fall was due solely to his own actions in walking on snow and ice, a God-made condition of which he was fully aware. Thus, the court determined that, as a matter of law, it was enough that Fulton was injured in the parking lot, that is a remote part of the business, rather than, as in
 
 Good,win,
 
 in a designated walkway or covered area that was immediately adjacent to and directly connected to the businesses] entrance or exit.
 

 Lawrence,
 
 922 So.2d at 3 (¶ 12) (internal citation omitted).
 

 ¶ 26. In
 
 Lawrence,
 
 this Court applied Fulton’s directives and found a plaintiffs fall in a parking lot, some thirty-five feet from the store entrance, had occurred in a remote location; therefore, “[b]ased on
 
 Fulton,
 
 business owners are not required to clear naturally accumulated ice and snow from their parking lots.”
 
 Id,,
 
 at 4 (¶ 15) (citing
 
 Fulton,
 
 664 So.2d at 175).
 

 ¶ 27. Here, Blanton’s fall occurred in the parking lot, forty-eight feet from the store’s entrance — not on an adjacent pathway. Thus, we reject the notion that
 
 Goodwin
 
 applies. Because we find his injury resulted from a natural condition in a remote location in the store’s parking lot, the first and third black-letter conclusions set forth in
 
 Fulton
 
 do not apply. Therefore, we must determine, in accordance with the second black-letter conclusion in
 
 Fulton,
 
 whether Blanton knew and appreciated the dangerous conditions.
 

 Hi. Knowledge and Appreciation of Danger
 

 ¶ 28. Here, we are not faced with an isolated patch of ice, as the
 
 Rowan
 
 court was. Though Blanton contends he did not appreciate the condition leading to his fall, it is undisputed that Roger’s entire parking lot was exposed to precipitation and freezing temperatures which covered much of Corinth in snow and ice. Blanton and his wife had already delivered newspapers across the city in these conditions. Blanton’s wife noticed the roads were getting slicker, and Blanton knew the store’s parking lot was covered with “approximately an inch, inch and a half of snow.” Indeed, he even recalled that as he entered and exited the store he probably commented to Roger’s employees, who were in the process of clearing ice from the store entrance, something to the effect that they had their work cut out for them.
 

 ¶ 29. The
 
 Rowan
 
 court pointed out: “[A]s indicated in dictum in
 
 Birdsong v. City of Clarksdale,
 
 191 Miss. 532, 3 So.2d 827 (1941), ... ice and sleet on an inclined
 
 *1230
 
 street is by its nature dangerous[,] and the city would ordinarily not be liable for damages sustained when one slips thereon.”
 
 Rowan,
 
 232 So.2d at 160. The court also acknowledged that “[i]f there had been a
 
 general condition of ice on the streets and sidewalks
 
 of the City of Baldwyn resulting from natural causes,
 
 reasonable care on the part of the city would not necessarily require its removal.” Id.
 
 (emphasis added).
 

 ¶ 30. As noted in
 
 Fulton,
 
 sleet, slush and ice are usual winter conditions, which individuals “can expect to encounter.”
 
 Fulton,
 
 664 So.2d at 175. Indeed, we find this logic applicable particularly to Northeast Mississippi winter storms. Moreover, it is undisputed that these conditions were both prevalent and noticed by Blanton as he traversed Roger’s parking lot to enter the store and later return to his vehicle. Accordingly, based on the facts before us, we find Blanton certainly appreciated and had knowledge of the general natural wintry conditions which contributed to his fall. Thus, under the natural-conditions rule, we find an absence of negligence on the part of Roger’s and conclude that summary judgment was proper.
 

 B. Premises Liability
 

 ¶ 31. Even though we find naturally occurring ice caused Blanton’s fall and that summary judgment was proper under the rules set forth in
 
 Fulton,
 
 we find that Blanton’s claim also fails under general premises liability law.
 

 ¶ 32. Stores such as Roger’s owe “a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care.”
 
 Fulton,
 
 664 So.2d at 175 (citing
 
 Jerry Lee’s Grocery, Inc.,
 
 528 So.2d at 293).
 

 ¶ 33. However, “[sjtrict liability is not imposed on [business owners] in premises liability cases.”
 
 Martin v. Rankin Circle Apartments,
 
 941 So.2d 854, 864 (¶ 45) (Miss.Ct.App.2006) (citing
 
 Corley v. Evans,
 
 835 So.2d 30, 41 (¶¶ 32-33) (Miss.2003)). And business operators are not insurers against all injuries.
 
 Jacox v. Circus Circus Miss. Inc.,
 
 908 So.2d 181, 184 (¶ 7) (Miss.Ct.App.2005) (citing
 
 Munford, Inc. v. Fleming,
 
 597 So.2d 1282, 1284 (Miss.1992)).
 

 ¶ 34. Furthermore, mere proof of the occurrence of a fall “is insufficient to show negligence on the part of the proprietor.”
 
 Byrne v. Wal-Mart Stores, Inc.,
 
 877 So.2d 462, 465 (¶ 6) (Miss.Ct.App.2003) (quoting
 
 Sears, Roebuck & Co. v. Tisdale,
 
 185 So.2d 916, 917 (Miss.1966)). Rather, in order to succeed on his premises liability claim, Blanton must show either: “(1) a negligent act by the defendant caused the plaintiffs injury; or, (2)[the] defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant.”
 
 Id.
 
 at (¶ 5) (citing
 
 Downs v. Choo,
 
 656 So.2d 84, 86 (Miss.1995)).
 

 ¶ 35. We first note Blanton shows no affirmative negligent act on the part of Roger’s. Instead, he argues Roger’s had actual knowledge that a dangerous artificial condition existed in the lot, which caused water to accumulate and ultimately freeze. His sole support for this argument is found in the deposition testimony of Jimmy Trussed, a Roger’s employee. Though Trussed testified that a drain exists near the depression in the parking lot, he explained that normal rainfall did not cause water to accumulate there, as evidenced by the following exchange:
 

 
 *1231
 
 Q. So does water — have you ever seen an occasion when water would actually puddle in the parking lot?
 

 A. No. Because we’re so busy, cars keep it knocked off. I really can’t remember a time when I have seen water puddled out there, unless like last Friday night when it was a tornado. I could see it then.
 

 Q. That would be ponding, not puddling.
 

 A. Yeah. Just normal rainfall, I never have.
 

 [[Image here]]
 

 Q. So, if water falls on the parking lot, it is going to flow to this drain that you’ve marked Dl; is that correct?
 

 A. If there was any that puddled, it would, but I don’t believe there is any that puddles that much.
 

 Indeed, Trussell maintained that “from '98 to 2004, [he had] never ... seen water pooled up out here,” referring to the Roger’s parking lot.
 

 ¶ 36. Here, viewing Trussell’s testimony in a light most favorable to Blanton, we cannot make the leap that a triable fact issue exists as to whether Roger’s knew or should have known of a dangerous condition involving pooling or accumulation of water in its parking lot. Not only is prior notice lacking, Blanton offers nothing to show that on the day of his fall, Roger’s had actual knowledge water had pooled and frozen in that location. Furthermore, he provides no testimony about prior falls in the area, nor does he show the alleged dangerous artificial condition existed long enough to impute constructive knowledge to Roger’s. Thus, we find his argument also fails under general premises liability law.
 

 II. Defective Design
 

 ¶ 37. Blanton next contends Roger’s defectively designed parking lot facilitated the accumulation of water and ultimately ice in the area where he fell.
 

 ¶ 38. Roger’s, however, claims Blanton is precluded from raising this argument because he did not allege a design defect in his complaint. We agree. Because Blanton failed to pursue a design-defect claim, he cannot raise it for the first time on appeal.
 
 Wimley v. Reid,
 
 991 So.2d 135, 136 n. 3 (Miss.2008). This issue is procedurally barred.
 

 ¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES AND CARLTON, JJ., NOT PARTICIPATING.