767 So.2d 234 (2000)
Richard K. NOLAN, Appellant,
v.
Kaye BRANTLEY, Appellee.
No. 1998-CA-01200-COA.
Court of Appeals of Mississippi.
April 4, 2000.
Rehearing Denied June 13, 2000.
Certiorari Denied September 21, 2000.
*236 James Warren Kitchens, Margaret P. Ellis, Jackson, Attorneys for Appellant.
J. Gordon Flowers, John W. Crowell, William Thomas Cooper, Columbus, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
LEE, J., for the Court:
¶ 1. The case before the Court involves a claim by Richard Nolan, the appellant here and plaintiff below, against his mother, Kaye Brantley, for personal injuries he sustained while operating her lawn mower on her business premises. A Lowndes County Circuit Court jury returned a verdict in Brantley's favor and Nolan now appeals. He suggests three errors that would require the judgment to be reversed and remanded for a new trial. This Court, after due consideration, has determined that the judgment entered on the jury's verdict should be affirmed.

FACTS
¶ 2. The appellant, Richard Nolan (Nolan) was the adopted son and only child of the appellee, Kaye Brantley (Brantley), and her first husband, Mr. Nolan. Mr. and Mrs. Nolan divorced and Richard's adoptive mother married Roy Brantley when Richard was seven years old. Mr. and Mrs. Brantley moved to Columbus and opened Roy and Kaye's Sewing Center. Mr. Brantley died in 1983 and Mrs. Brantley continued to operate the business after his death. At the time of the accident Nolan resided in Pascagoula with his family. Since Mr. Brantley's death, Nolan made frequent trips to Columbus to visit his mother and often helped her with various chores. We note at this time that *237 prior to trial Brantley remarried and her last name was changed to Warren.
¶ 3. On July 6, 1985, Nolan, along with his wife and daughters, was visiting his mother at the store. His mother asked him to cut the grass in the back of the store because it was two feet high, not having been cut in over a month and a half. Nolan proceeded to do so while his mother, wife, and two young daughters went to Brantley's home. Nolan's routine for cutting the grass was to use a push mower for the front and side yards and to use a push mower as well as a riding lawn mower in the back yard. On this date, while he was cutting the level area of the back yard with the riding lawn mower, he hit a hole or a washed out area and the mower turned over. Nolan fell and part of his right heel was cut off.
¶ 4. Nolan was at the store alone when this happened. When he realized how badly he was injured, he crawled up to the parking lot and got the attention of someone who called an ambulance. Nolan was admitted to a local hospital where he underwent three surgeries to his foot prior to being released on July 31, 1985. He then returned to his home in Pascagoula where he was required to remain in bed the majority of the time. As a result of this inactivity he developed a pleuritic condition which required hospitalization for several days. In early September Nolan was readmitted to the hospital for a skin graft to his injured heel.
¶ 5. Nolan missed fifty-eight days from work. His total loss of wages were $4, 021.14 and his incurred medical expenses totaled $22, 938. 98. In seeking damages from Brantley as a result of the accident, he asserts that a new trial should be granted on the basis of the following three issues on appeal: (1) that the court erred in allowing the defense to ask leading questions of the defendant and then refusing to permit the plaintiff to re-cross-examine the defendant, (2) that the court erred in refusing to grant jury instruction P-9 regarding the Brantley's personal financial ability to satisfy a verdict and that jury instructions D-9 and D-14 were not supported by the credible evidence, and (3) that the court erred in refusing to strike jurors for cause.

STANDARD OF REVIEW
¶ 6. A motion for a new trial challenges the weight of the evidence. Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996). The grant or denial of a motion for a new trial is a matter within the sound discretion of the trial judge. May v. State, 460 So.2d 778, 781 (Miss.1984). The credible evidence of the case must be viewed in the light most favorable to the non-moving party. Clark v. Columbus & Greenville Ry. Co., 473 So.2d 947, 950 (Miss.1985). When the evidence is viewed as such, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion. Moody v. RPM Pizza, Inc., 659 So.2d 877, 881 (Miss. 1995).

DISCUSSION OF ISSUES

I. THAT THE COURT ERRED IN ALLOWING THE DEFENSE TO ASK LEADING QUESTIONS OF THE DEFENDANT AND THEN REFUSING TO PERMIT THE PLAINTIFF TO RE-CROSS-EXAMINE THE DEFENDANT
¶ 7. Nolan called Brantley as an adverse witness during his case-in-chief. During Nolan's cross-examination of Brantley, the defense asked the court for a recess because of the surprise nature of Brantley's testimony. At this time the court denied the defense's request for leave of court to ask Brantley leading questions during direct examination. Thereafter, the defense proceeded with direct examination of Brantley, and the *238 court then allowed defense counsel, over plaintiffs objection, to ask Brantley leading questions based on her "failure of memory and the passage of time." At the conclusion of this testimony, Nolan requested that he be allowed to recrossexamine Brantley in light of the latitude the court had given defense counsel in questioning his witness. The court denied this request, commenting that it had not granted that much latitude. Nolan claims that as a result, the testimony elicited from Brantley by defense counsel using leading questions was in conflict with that given by Brantley during examination by the plaintiff leaving the jury with confusion.
¶ 8. Nolan cites Deshpande v. Ferguson Bros. Construction Co., 611 So.2d 877, 878 (Miss.1992), in support of his argument that leading questions should not have been permitted by the defense of Brantley, stating that "[i]t would not be fair to allow the defense to establish its case during the plaintiffs direct case by asking leading questions of a friendly witness." However, Rule M.R.E. 611 provides that "leading questions can be used in questioning a hostile witness, an adverse party, or a witness identified with an adverse party." Though it cannot be argued that Brantley was clearly identified with Nolan, this is not the basis upon which the court permitted the defense the use of leading questions. Rather, the record shows that leading questions of Brantley were permitted by the defense because of the "failure of memory and the passage of time." The comment to M.R.E. 611(c) discussing the use of leading questions states that "instances may occur where the use of leading questions is permitted with the witness whose recollection is exhausted and with the witness who has communication difficulties." The record clearly indicates that Brantley's memory had faded with the passage of time, her response to questions posed by the defense in many instances being that she could not remember. This is understandable since the accident occurred twelve and one-half years prior to the trial. We, therefore, find that the court did not abuse its discretion in allowing defense counsel to use leading questions.
¶ 9. In addition, at the end of defense counsel's questioning of Brantley, Nolan sought recross-examination in light of the fact that leading questions were permitted for the defense. The court denied this request, and Nolan now argues that this was error. Recross-examination may be limited by the trial judge in his sound discretion. Hubbard v. State, 437 So.2d 430, 434 (Miss.1983). Nolan complains that because the defendant established his case on plaintiffs direct that the defendant was not called during defendant's direct case, and Nolan was thus denied the opportunity to clarify the witness's conflicting testimony. The fact that the defense chose not to call Brantley on its direct has no bearing on whether Nolan should have been permitted to recrossexamine Brantley on his direct. Nolan chose as his trial strategy to call Brantley as an adverse witness twelve and one-half years after the accident, litigated accordingly, and lost. Looking to our standard of review, the record shows no indication that the court abused its discretion in its denial of recross-examination, and we find no merit in this assignment. Moody, 659 So.2d at 881.

II. THAT THE COURT ERRED IN REFUSING TO GRANT JURY INSTRUCTION P-9 REGARDING BRANTLEY'S PERSONAL FINANCIAL ABILITY TO SATISFY A VERDICT AND THAT JURY INSTRUCTIONS D-9 AND D-14 WERE NOT SUPPORTED BY THE CREDIBLE EVIDENCE

Instruction P-9
¶ 10. Nolan asserts that the court should have granted the plaintiffs jury instruction P-9, which stated that the jury should not consider the defendant's personal financial ability to satisfy any verdict *239 rendered. In support of this, he claims that defense counsel made references in opening statement which would lead the jury to believe that Brantley was experiencing financial difficulty. The portions of Brantley's opening statement to which Nolan refers read as follows:
[T]here's no doubt that in 1983 ... after Mr. Brantley died that Mrs. Warren was having a very difficult time. The proof will show to you that ... she really didn't have any experience in the business world ... and that it was very difficult for her to take on those responsibilities, and her son being loving and concerned about her was eager to try to come up and help her in any way that he could. One of the ... jobs that he took on was cleaning up around the business. The proof will show that he did that probably on a monthly basis.
She was overwhelmed by the business, as I say, and the proof will show that that she was struggling to-to get it done.
¶ 11. We fail to see where the above statements refer to Brantley's financial condition. Rather, it could be argued that the statements raise an inference that Brantley's business was very good and that as a sole proprietor who was overwhelmed with those responsibilities, she enjoyed a comfortable financial condition. Nevertheless, the statements made by counsel were general in nature and can lead to many inferences. Nolan, however, argues that counsel's statements rise to the same level as those referring to a defendant's financial worth and cites several cases in support thereof. The court in Jones v. Carter, 192 Miss. 603, 610, 7 So.2d 519, 521 (1942), stated that the presentation of evidence regarding the defendant's financial worth was highly prejudicial. In Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396 (Miss.1975), the court held that such evidence is reversible error. The prejudice in these cases, however, resulted from specific and unambiguous evidence presented as opposed to that in the case sub judice which requires an inference from an opening statement. The court here explained to the jury that opening and closing statements were not evidence and that the only evidence it was to consider was the sworn testimony of witnesses and physical exhibits introduced and marked as evidence.
¶ 12. We thus do not find that these statements made by defense counsel during his opening statement could rise to the level of prejudice which would cause a jury to enter a verdict contrary to the overwhelming weight of the evidence and find no merit to this assignment of error.

Jury Instructions D-9 and D-14
¶ 13. In reviewing jury instructions on appeal two concerns are necessarily implicated: the instruction must contain a correct statement of the law, and the instruction must be warranted by the evidence. Langston v. Kidder, 670 So.2d 1, 5 (Miss.1995); Hill v. Dunaway, 487 So.2d 807, 809 (Miss.1986).
¶ 14. Nolan argues that Jury Instruction D-9 was confusing because of the use of the words "mutual advantage" and that the instruction misstated the law. If jury instructions fail to set out the applicable law the case must be reversed and remanded. Boone v. Wal-Mart Stores, 680 So.2d 844, 845 (Miss.1996). Nolan claims that he was cutting the grass for his mother's benefit and there was no advantage for him. Jury Instruction D-9 in its entirety reads as follows:
An invitee is a person who goes upon the premises of another because of an express o[r] implied invitation of the occupant and for their mutual advantage. If you find that the plaintiff was an invitee when he was on the premises of Kaye Warren, then it was Kaye Warren's duty to keep her premises in a reasonably safe condition and to warn him of dangerous conditions not reasonably apparent to him. Kaye Warren was not [a] guarantor of the plaintiffs safety. A party in control or possession of the premises is liable for injury to an *240 invitee caused by a dangerous condition on the premises only if she knew, or in the exercise of reasonable care should have known, about the condition and failed to take measures reasonably calculated to remove the danger or warn an invitee of its existence. However, there is no duty to warn the invitee of a defect or danger which is known to him or which was as well known to him as to the occupant. If you find from a preponderance of the evidence in this case that plaintiff either knew about the dangerous condition, if any existed, which he claims caused the injury, or he knew as much about the condition as did Kaye Warren, then your verdict shall be for Kaye Warren.
You may return a verdict for the plaintiff in this case only if all of the following are true:
1. Kaye Warren was in control or possession of the premises; and
2. The plaintiff was on Mrs. Warren's premises for their mutual advantage; and
3. There was a dangerous condition on the premises; and
4. Kaye Warren knew or in the exercise of reasonable care should have known about the dangerous condition; and
5. The plaintiff did not know about the dangerous condition; and
6. Kaye Warren failed to either take steps calculated to remove the danger, if any, or to warn the plaintiff [o]f its existence; and
7. Kaye Warren's failure to take steps to remove the danger or warn the plaintiff was a proximate cause of the plaintiff's damages.
However, if the plaintiff has failed to prove any one, or more, of the above elements, by a preponderance of the evidence, then your verdict shall be for Kaye Warren.
Though the record indicates some confusion with regard to Instructions D-9 and D-9a, we will consider Nolan's objection to Instruction D-9 as having been preserved.
¶ 15. Instruction D-9 merely spells out the specific elements that Nolan had to prove in order to meet his burden of proof. It is well-settled in this state that an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008, 1011 (Miss.1978). There was never a question of fact presented at trial regarding Nolan's status, Nolan conceding it to be that of an invitee. He therefore cannot complain of the terminology used in the definition of the term in the instruction since it accurately reflects Mississippi law. The Mississippi Supreme Court has held in numerous cases that the duty owed to an invitee is to exercise reasonable care to keep the premises in a reasonably safe condition, and if the owner is aware of a dangerous condition not readily apparent to the invitee, he is under a duty to warn the invitee of the condition. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss.1992) (quoting Jerry Lee's Grocery v. Thompson, 528 So.2d 293, 295 (Miss.1988)). There is no liability for injuries where the condition is not dangerous or where the condition is, or should be, known or obvious to the invitee. King v. Dudley, 286 So.2d 814, 816 (Miss.1973). The instruction also correctly states the plaintiffs burden of proof as the preponderance of the evidence. James M. Burns Lumber Co. v. Dilworth, 676 So.2d 892, 893 (Miss.1996); Lovett v. Bradford, 676 So.2d 893, 896 (Miss.1996)
¶ 16. In addition, we find that the remainder of the instruction parallels this state's law as to its substance in that it applies the facts of this case to the law. The record indicates that testimony was presented regarding the applicable facts supporting the defenses's theory of the case espoused in this instruction. A party has the right to have his theory of the case presented to the jury by instructions, provided *241 that there is credible evidence that supports that theory. Alley v. Praschak Mach. Co., 366 So.2d 661, 665 (Miss.1979). We, therefore, find that the applicable law has been accurately stated with regard to Instruction D-9 and that the evidence presented at the trial warranted the instruction.
¶ 17. Nolan also argues that Instruction D-14 was error because it was confusing, abstract, and not supported by the credible evidence. That instruction reads as follows:
Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either in doing something that a reasonable careful person would not do under like or similar circumstances, or in failing to do something that a reasonably careful person would do under like or similar circumstances.
You are instructed that Kaye Warren is not responsible for injuries caused by Richard K. Nolan's own negligence.
If you find from a preponderance of the evidence that the negligence of Richard K. Nolan was the sole proximate cause of his injuries, then you must return your verdict for the Defendant, Kaye Warren.
Nolan claims that the instruction was abstract in that it failed to define what the plaintiff must have known or appreciated in order to have been negligent. He asserts that jury instructions must state what facts are necessary to constitute negligence, citing City of Jackson v. Copeland, 490 So.2d 834, 838 (Miss.1986), and that the instruction failed to do so.
¶ 18. Though we agree that this information is germane, we are also aware that jury instructions must be read as a whole to determine whether or not the jury was correctly instructed. Jackson v. Griffin, 390 So.2d 287, 290 (Miss.1980). In reviewing the instructions as a whole, we find that instruction P-4 read together with D-14 supplies the information required. Instruction D-14 defines negligence in terms of failure to use reasonable care and P-4 defines the defendant's duty to exercise reasonable care as one to keep the premises in a reasonably safe and suitable condition and to warn the plaintiff of a hidden or concealed peril which she knew existed or should have known existed.
¶ 19. In addition, Nolan argues that there was no evidentiary basis for the instruction, citing Munford v. Fleming, 597 So.2d 1282, 1286 (Miss.1992). In reviewing the record, we find that credible evidence was presented to support the finding that Nolan knew about the alleged dangerous condition, or that he knew as much or more about it than his mother. Nolan himself testified that he was the only person who mowed the yard and that he had mowed it on many occasions, though he did not cut the back yard every time he came to visit his mother. He would only cut the back yard when it became unbearable. He also stated that he knew there was a drainage ditch alongside the building and that water flowed into the level area of the yard, and he did not walk through the yard and inspect it on the day that the accident occurred. He stated that he knew the use of the riding lawn mower on the incline would be dangerous, and that when the accident occurred, he was turning the mower to the left and he fell to the right, injuring his right heel. The inference could be reasonably drawn that he was on the incline when he fell, though he testified that he was not. Based on his own testimony, as well as all reasonable inferences, we find that the credible evidence supported the jury's finding.

Jury Instruction P-5
¶ 20. Nolan also complains that Instruction P-5 should have been granted. The record shows that it was denied as being repetitious of P-4. We find that it was properly denied as having been repetitious *242 not only of P-4 but also of D-9, thus finding no reversible error in its not having been granted. Wall v. State, 413 So.2d 1014, 1015 (Miss.1982).

III. THAT THE COURT ERRED IN REFUSING TO STRIKE JURORS FOR CAUSE
¶ 21. Nolan contends that the court erred in refusing to strike three jurors for cause. The record shows, however, that he fails a threshold test. Prerequisite to presentation to such a claim on appeal is a showing that Nolan had exhausted all of his peremptory challenges, and the incompetent juror was forced upon him by the trial court's erroneous ruling. No such showing may be made in this case, for Nolan used only three of his peremptory challenges. Chisolm v. State, 529 So.2d 635, 639 (Miss.1988). We, therefore, find no merit to this assignment of error.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. BRIDGES, J., DISSENTS WITHOUT WRITTEN OPINION.