IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-60079

MARY WOOD

Plaintiff - Appellant

V.

RIH ACQUISITIONS MS II LLC

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before BENAVIDES, SOUTHWICK, and HAYNES*, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Mary Wood appeals from the grant of summary judgment in favor of the defendant in a premises liability case. She argues that there were fact questions as to whether the premises were unreasonably dangerous and whether the hazard that caused her to fall was open and obvious. We agree with these contentions and therefore REVERSE and REMAND.

I. BACKGROUND

On January 7, 2006, Mary Wood was a passenger in an automobile that traveled to Bally's Hotel and Casino in Tunica, Mississippi. Her driver pulled underneath a large porte cochere at the entrance to the casino. The traffic lanes

_____

* Concurring in the judgment only.

there were delineated by rows of reflectors. These reflectors measured approximately four inches by two inches horizontally, rose five-eighths of an inch above the pavement, and were laid at one and one-half foot intervals. The casino manager testified that for aesthetic reasons the reflectors had replaced plastic poles about thirty inches high that previously separated the lanes.

After arriving at the casino, Ms. Wood exited the car through a rear door. Almost immediately, she tripped over one of the reflectors. She broke a hip and elbow as a result of the fall. Prior to her fall, Bally's had received no reports of patrons tripping over these reflectors.

Just less than a year later, Ms. Wood brought suit against RIH Acquisitions. After discovery, RIH filed for and was granted summary judgment on all claims. This appeal followed.

## II. DISCUSSION

In reviewing the district court's ruling in this diversity action, this court applies Mississippi substantive law. Foradori v. Harris, 523 F.3d 477, 486 (5th Cir. 2008) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). We review a grant of summary judgment de novo. North American Specialty Ins. Co. v. Royal Surplus Lines Ins. Co., 541 F.3d 552, 555 (5th Cir. 2008). Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Premises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty. Massey v. Tingle, 867 So. 2d 235, 239 (Miss. 2004). Both parties agree that Ms. Wood's status was that of a business invitee at the time of her accident. The premises encountered by a business invitee must be reasonably safe, and when they are not, the invitee is to be warned of perils that are not in plain view. Id. The state supreme court has explained that the existence of a dangerous condition and a failure to warn

are different theories of negligence, not different causes of action. Mayfield v. The Hairbender, 903 So. 2d 733, 735 (Miss. 2003).[1]

We review some recent history of Mississippi premises liability law in order to highlight our understanding of the current applicability of certain precedents. Until relatively recently, a hazard that was open and obvious to an invitee could not be the basis for liability. In one example, there was no liability when a patron stumbled on a curb that was six inches high, six inches wide, and painted orange, because the hazard was open and obvious. Kroger, Inc. v. Ware, 512 So. 2d 1281, 1282 (Miss. 1987). However, that case was quoted and its analysis superceded in a precedent that declared that the obviousness of a hazard was simply a component of comparative negligence. Tharp v. Bunge Corp., 641 So. 2d 20, 23-24 (Miss. 1994). Recently, the Mississippi Supreme Court has stated that an open and obvious hazard can be unreasonably dangerous and a basis for liability. Mayfield, 903 So. 2d at 739.

We contrast this fairly recent innovation in the open and obvious defense, to some caselaw relating to "dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps." Tate v. Southern Jitney Jungle Co., 650 So. 2d 1347, 1351 (Miss. 1995). The category of usual and normally expected dangers was apparently created in Tate, as no prior reference to that concept in the state's jurisprudence has been discovered. Part of the reason for the creation may be that Tate was released a year after Tharp and needed to address and perhaps minimize concerns about how much was altered on the legal landscape. Tate favorably

---

[1] Our effort to give an overview is not exhaustive. There are permutations to these rules, such as the different liability of a premises owner when a hazard is created by a patron. Miller v. R.B. Wall Oil Co., Inc., 970 So. 2d 127, 132 (Miss. 2007). There are special rules when the hazard was the criminal act of someone not connected with the business. Titus v. Williams, 844 So. 2d 459, 464 (Miss. 2003). We have given enough to understand our ruling but not to understand all of Mississippi premises liability law.

discussed a pre-Tharp precedent which had held that a door threshold that was raised three-fourths of an inch from the height of the approach from each side had not made the premises unreasonably dangerous. Id. (citing McGovern v. Scarborough, 566 So. 2d 1225, 1228 (Miss. 1990)). Arguably, the curb in the 1987 Kroger precedent we just discussed would be similarly expected and non-actionable.[2] Tate itself involved a customer who scraped her knee on a sharp-edged metal strip fastened beneath a delicatessen counter. The strip was below the usual line of sight. A jury question existed on whether that strip caused the premises to be unreasonably dangerous. Id. Tate can be read to find that door thresholds are in the category of hazards that can be expected and therefore do not make premises unreasonably dangerous, while the sharp metal strip beneath a deli counter was not such an expected hazard.

Having discussed Tate, we are nonetheless uncertain about the present role in state law of this principle that usual and normally expected hazards are not unreasonably dangerous. This category of hazards was created in an opinion in which four of nine justices joined, while a fifth concurred in the result. Tate, 650 So. 2d at 1351. It was written as an explanation of why certain pre-Tharp precedents had not been undermined despite the court's changed view about open and obvious hazards, but the principle was not part of the holding in the case. Id. Four Tate dissenters criticized Tharp and the impact it had on prior premises liability law. Id. at 1352 (Smith, J., dissenting). The absence of a majority may explain why Tate's categorizing of some dangers as usual and normally expected has been quoted only once by the supreme court. That quoting was by, ironically, the writer of the Tate dissent, writing only eight

---

[2] The state intermediate court used Kroger, despite Tharp, to affirm a summary judgment against a patron who sought recovery for a stumble over a parking lot curb. Thompson v. Chick-Fil-A, Inc., 923 So. 2d 1049, 1052-53 (Miss. Ct. App. 2006).

months after Tate. Fulton v. Robinson Indus., Inc., 664 So. 2d 170, 175 (Miss. 1995) (Smith, J., for the court). We now examine this later opinion.

Fulton concerned a slip and fall on accumulated ice and snow in a restaurant parking lot. Id. at 171. The opinion reviewed Tharp and Tate and also discussed prior precedents arguably affected by those two then-recent decisions. The Fulton opinion referred to the Tate category of dangers that are "usual and which customers normally expect to encounter on the business premises, . . . [and] claimed physical defect[s] on the defendant's premises . . . which may be found to be unusual and unreasonably dangerous." Id. at 174-75 (quoting Tate, 650 So. 2d at 1351). The described developments in Mississippi law were said to have left these principles in place:

> An owner or operator of a business still owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which owner or occupant knows of, or should know of, in the exercise of reasonable care. Jerry Lee's Grocery, Inc. v. Thompson, 528 So. 2d 293 (Miss. 1988). The invitee is still required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance. Tate, 650 So. 2d at 1351.

Id. at 175. The "law still revolves around what the owner can 'anticipate' or 'expect,' or what is 'usual.'" Id.

The Fulton court then identified three situations, with different combinations of facts about whether hazards were natural or man-made, whether they were near or distant from the store entrance, and whether they were open and obvious. Id. We will explore the categories later. Important here is that their description was prefaced by a statement that they summarized all caselaw on open and obvious hazards: "The entire body of slip and fall case law combined with this Court's latest pronouncements on the open and obvious

doctrine can be summed up in these black letter conclusions," an announcement that is then followed by the description of the three categories.  Id.

One question about the effect of the Fulton analysis on the Tate label of usual and expected hazards arises from the fact that an open and obvious hazard is not necessarily a usual and expected one.  To state an extreme example, a ten-foot-wide and five-foot-deep hole in the casino parking lot would, at least during a sunny day, likely be open and obvious.  However, it would likely not be the kind of hazard that business invitees would usually expect to encounter without clear warning.  The hole's open and obvious character would not prevent a jury question from arising as to whether it was unreasonably dangerous.  On the other hand, the usual and normally expected hazards listed in Tate – thresholds, curbs, and steps – would likely also be open and obvious.  Thus, it appears that the open and obvious category contains all usual and normally expected hazards.

Our search through these cases has been to find answers to whether the Tate labeling of certain hazards as usual and normally expected has any continuing relevance.  It is remarkable that only in Fulton did the highest Mississippi court return to the language of the plurality opinion in Tate.[3]  When Fulton stated that the "entire body of slip and fall case law," at least insofar as open and obvious hazards were concerned, was to be understood by examining these three categories, the effect may have been to subsume the Tate approach into the categories.  That would mean that Tate did not create a new legal theory barring recovery when injuries are caused by "dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps."  Tate, 650 So. 2d at 1351.  Instead, the Tate

---

[3] We also note that the Mississippi Supreme Court has apparently never cited Fulton for its three-category list.  It could be that neither Tate nor Fulton is seen by that court as the best description of current law.

opinion's discussion became nothing more than a one-time label to demonstrate why certain pre-Tharp precedents were not applicable.

Thought the Tate words have been unspoken by the supreme court during the thirteen years since Fulton, the language has hardly been overlooked by all.[4] Federal courts applying Mississippi law have with some frequency found to be relevant that dangers were the kind that were expected and usual. We will analyze a few of those federal court opinions, but there are others.[5] None of the Fifth Circuit opinions were published, so they are not binding precedent. Still, those panels made careful reviews of this same caselaw.

We start our review of federal court precedents by examining the analysis of the district court in the present case. It relied in large part on a pre-Tharp state court precedent which held that a raised threshold, not otherwise defective, was not unreasonably dangerous. McGovern, 566 So. 2d at 1228. The condition on which Ms. Wood stumbled at the casino appeared to the district court to be

---

[4] The Mississippi Court of Appeals cited Tate when referring to hazards that were "hardly unusual" and did not support liability. Wal-Mart Stores, Inc. v. Littleton, 822 So. 2d 1056, 1059 (Miss. Ct. App. 2002). The intermediate court has apparently not used this concept in any other case that cites Tate. We are particularly focused on the Supreme Court, though, because we are searching for whether it sees the Tate language as having continuing effect.

[5] See, e.g., Smith v. Fed. Cleaning Contractors, Inc., 126 F. App'x 672, 674-75 (5th Cir. 2005) (unpublished) (garden hose on the ground outside of a mall entrance before the mall opened usual and expected); McCain v. Lehman Bros., Inc., No. 3:06-CV-327, 2008 WL 872431, at *2-3 (S.D. Miss. Mar. 27, 2008) (uneven sidewalk in front of a department store is not a "hazardous condition"); Green v. Highland Health Club, Inc., No. 5:06-CV-152, at *4 (S.D. Miss. Jan. 9, 2008) (genuine issue of material fact as to whether an uneven sidewalk was a condition normally encountered on business premises); Mack v. Waffle House, Inc., No. 1:06-CV-559, 2007 WL 1153116, at *2 (S.D. Miss. Apr. 18, 2007) (large crack in the sidewalk is not a "hazardous condition"); Cook v. Payless Shoesource, Inc., No. 5:05-CV-19, 2006 WL 1328895, at *8 (S.D. Miss. May 12, 2006) (genuine issue of material fact as to whether the condition of a sidewalk was one normally encountered on business premises); Smith v. Petsmart, Inc., No. 3:04-CV-530BN, 2006 WL 47356, at *3 (S.D. Miss. Jan. 6, 2006) (prong of a forklift extending into the aisle of store is not unreasonably dangerous because the use of forklifts is a "normal business practice that customers should expect to encounter").

sufficiently similar to a threshold. Consequently, the reflectors in Bally's porte cochere were held not unreasonably dangerous as a matter of law.

We see two distinctions. First is that McGovern was handed down before Tharp, making at least the terminology of the case something to be used cautiously. The other is that a threshold at a doorway – the "hazard" about which McGovern complained – was quintessentially the kind of condition that people might expect when coming upon the inevitable unevenness that exists at business locations. Thresholds, curbs, steps, and other usual features may prove hazardous to a particular individual. Under the Tate principle, though, that hazard would not be unreasonably dangerous if it is a condition that could reasonably be expected. Many doors have raised thresholds. A business invitee can reasonably expect to encounter that situation. To affirm the district court in the present case under Tate, we must be able to apply that concept to these reflectors. They must be, as a matter of law, among the "dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps." Tate, 650 So. 2d at 1351.

In answering the question, we find useful, though not precedential, two unpublished 1999 opinions from this court that applied Mississippi law. In one, a jury found somewhat larger reflectors on a driveway to be unreasonably dangerous when shoppers needed to cross over them to get between the store and a parking lot. Sanders v. Wal-Mart Stores, Inc., 180 F.3d 263, 1999 WL 274551, at *1 (5th Cir. 1999) (unpublished table decision). We affirmed because the reflectors were "not necessarily expected and acceptable conditions to be encountered by invitees of a business." Id. The other decision was in a suit brought against a casino owner by a patron who had stumbled in small holes in a driveway in front of the business. Lichtman v. Harrah's Tunica Corp., 181 F.3d 97, 1999 WL 346965, at *1 (5th Cir. 1999) (unpublished table decision). There was evidence that the holes were two inches deep, surrounded by a raised

lip; competing evidence was that the holes were only about one-eighth of an inch deep. Id. The jury reached a verdict for the plaintiff, but the district court entered judgment for the casino. Ruling on the appeal, we remanded with instructions to reinstate the jury's verdict. Id. at *3. The Lichtman holding is consistent with a state court precedent cited by the district court that found damaged pavement at the bottom of steps that led up to a business was unreasonably dangerous. Mayfield, 903 So. 2d at 734.

Though we found fact issues in Lichtman and Sanders, another panel of this court recently held that an expansion joint for a curb outside of a store that had a crack approximately three and a half inches wide and two inches deep, was not unreasonably dangerous as a matter of law. Parker v. Wal-Mart Stores, Inc., 261 F. App'x 724 (5th Cir. 2008). The crack was not the basis for liability because business invitees could expect to encounter such a usual condition. Id. at 727-28. Parker is the only post-Tharp appellate opinion that we have found in which a defective condition was found to be usual and normally expected, though there is nothing illogical about such a finding. But see Chick-Fil-A, 923 So. 2d at 1052-53 (an "unbroken, unlittered, dry and otherwise unobstructed" curb was "quite unlike any other situation heretofore accepted as creating a dangerous condition").[6] In an earlier opinion, we affirmed a summary judgment

---

[6] One older state court precedent, recently analyzed for its applicability post-Tharp, is some guidance on the issue of non-dangerous "defects." In the older case, injuries were sustained by a pedestrian due to a three or four inch differential in height between sidewalk blocks. City of Biloxi v. Schambach, 157 So. 2d 386, 387 (Miss. 1968). The condition was obvious and known by the plaintiff; "a very slight degree of care for her own safety in her pregnant condition would have prevented the injury." Id. at 392. Consequently, the City had no liability. The Schambach decision was decided at a time when an open and obvious condition was a complete bar to recovery. The state intermediate court analyzed Schambach in light of Tharp and found that the obviousness of the hazard would not bar liability had the accident occurred on private property. Howard v. City of Biloxi, 943 So. 2d 751, 754-55 (Miss. Ct. App. 2006). That conclusion was dicta in a case that actually found complete immunity for a municipality. Id. at 756-57. Because the sidewalk was on municipal property, a statutory immunity applied that makes the "open and obvious" defense a complete bar to recovery. Id. at 756-57 (citing Miss. Code Ann. § 11-46-9(1)(v)). Though the analysis was by the

that a concrete bumper in a large parking lot was not unreasonably dangerous under the Tate analysis. McNamee v. Jackson Simon Ltd. P'ship, 54 F. App'x 793, 2002 WL 31845178, at * 2 (5th Cir. 2002) (unpublished table decision).

Some of these non-precedential opinions and Mayfield demonstrate a distinction that we have not found to make a difference. Though a defective condition such as broken pavement can be unreasonably dangerous, so can properly maintained devices such as the reflectors.[7] Accordingly, even though motor vehicle drivers may well use the porte cochere with greater safety due to the reflectors, also to be considered are the safety needs of pedestrians as they exit their cars or approach the casino entrance from elsewhere. We find nothing in the precedents that allows us to conclude that because the claimed hazard was actually a safety device, it could not be unreasonably dangerous.

Though the Tate analysis has found a home in federal court opinions applying Mississippi law, the different outcomes reveal that analyzing what hazards should normally be expected may lead to different views.

We have mentioned that the Mississippi Supreme Court has not returned to Tate in its analysis of whether a condition created by a premises owner is reasonably safe. In the post-Tharp legal world, summary judgment for a defendant rarely is sustained.[8] Instead of referring to Tate-like categories of

_____

intermediate court, its finding is of persuasive weight that sidewalk blocks that had gotten far out of alignment could not be found reasonably safe on summary judgment had there been no statutory immunity.

[7] Our Parker case dealt with the opposite, that expected defects in curbs also could be so usual as not to be unreasonably dangerous as a matter of law. Parker, 261 F. App'x 724. As we noted above, though, applying Tate to defective conditions extends beyond the Tate list of dangers created by the presence of thresholds, curbs, and steps.

[8] Some appeals in which summary judgments are upheld are factually unusual. One concerned a patron injured when a race car went out of control on a dirt track, hit a guardrail behind which she was standing, and caused the guardrail (but not the race car) to strike the patron. Massey, 867 So. 2d at 237. The court affirmed a summary judgment, finding that the pit area in which the patron was injured was reasonably safe "as evidenced by the fact that the

normally expected dangers (and not even using the Fulton categories of hazards near or far from the business entrance), the court simply applies this traditional broad understanding of duty to provide a reasonably safe premises:

> There is no dispute in this case that the Piggs were business invitees of Holiday Inn, which consequently owed them a duty of reasonable care in keeping their premises in a reasonably safe condition. While a premises owner is not an insurer of the safety of invitees, the premises owner does have a duty of reasonable care, to maintain its premises [in] a reasonably safe condition. That duty includes not only the duty to keep its premises in a reasonably safe condition, but the duty to "warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises."

Pigg v. Express Hotel Partners, 991 So. 2d 1197, 1199-1200 (Miss. 2008) (citations omitted). It is the first duty, that of keeping premises reasonably safe, that only in Tate was said by the state supreme court to be satisfied when the complained-of dangers are simply those "which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps." Tate, 650 So. 2d at 1351.

The second duty, that of warning of dangers that are not open and obvious, arises only when the premises are not reasonably safe. If a hazard is open and obvious, there is no duty to warn; liability would arise only from finding an unreasonably dangerous condition. Mayfield, 903 So. 2d at 735-36. Tharp's comparative fault rule likely is relevant only when a "plaintiff alleges the defendant was negligent in creating or failing to repair a dangerous condition, and the defendant alleges the dangerous condition was open and obvious." Id.

---

out-of-control car which struck the guardrail did not enter the pit area." Id. at 240. Thus, the protective guardrail had served the purpose for which it was intended. This was reasonable safety in a situation in which there was not only inherent but also announced danger in a waiver she signed when she entered the facility. Id. at 237.

at 737 & n.2. Because an open and obvious condition can be an unreasonably dangerous condition, an owner is not exonerated simply because the dangerous condition was obvious.[9]  Id. at 738.

We pull these somewhat divergent strands together as reasonably as possible. We accept that Tate and its almost exclusively federal offspring remain relevant until the Mississippi Supreme Court directs otherwise. We find nothing on which to base a conclusion that under Tate these small reflectors were usual, normally expected, and therefore not unreasonably dangerous. Further, looking at the broader description of Mississippi premises liability principles, we cannot conclude that the premises with these reflectors were reasonably safe as a matter of law.   The casino argues that the driveway area was reasonably safe despite the presence of numerous small attachments to the pavement.  These objects serve a safety purpose for vehicles.  To a pedestrian emerging from a vehicle, though, they may be overly low protrusions that cannot be seen.  They also are sturdy and raised enough to trip a person.  We cannot accept that summary judgment can reach a proper answer here.

A separate issue for premises liability also exists.  If the reflectors are found to be unreasonably dangerous, and if they are also found not to be open and obvious, then the casino owner had a duty to warn of their presence.  Tharp, 641 So. 2d at 25.  Whether a danger is open and obvious is a question for the jury in all but the clearest cases.  Bell v. City of Bay St. Louis, 467 So. 2d 657, 664 (Miss. 1985).  The only recognized distinction on the obviousness of a premises hazard concerns its location in relation to the business entrance.  We earlier

---

[9] The defendant's brief fails to recognize this post-Tharp reality, that the openness of a hazard is not in itself an exoneration from liability.  That error was also made by the intermediate state court in a case cited by Bally's, but which it fails to note was overruled on this very point.  Nolan v. Brantley, 767 So. 2d 234, 240 (Miss. Ct. App. 2000), overruled by Mayfield, 903 So. 2d at 738.  The failure of many pre-Tharp precedents to be overruled formally makes research by courts and litigants somewhat hazardous.

discussed other issues arising from the Mississippi Supreme Court opinion in which these first appeared, and now we explore the factors themselves:

> (1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger;
>
> (2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question;
>
> (3) if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger.

Fulton, 664 So. 2d at 175 (citations omitted). The reflectors here were an artificial/man-made condition adjacent to the entrance to the business. Under Fulton, their obviousness would be a jury question. In addition, we do not find that reflectors are, by their very nature, open and obvious to pedestrians simply because they catch and reflect light. Ms. Wood was in the backseat of the car and may not have seen the reflectors as she arrived. Once she exited, there was likely nothing to cause light to be reflected back to her as she started walking.

If the reflectors are found to be open and obvious, that finding becomes part of the mix of considerations in allocating fault under comparative negligence principles; such issues arise only if it is first determined that an unreasonably dangerous condition existed. See Mayfield, 903 So. 2d at 739.

## III. CONCLUSION

On remand, the reasonable safety of the reflectors and their open and obviousness are both fact questions. Because the Tate concept of usual and normally expected hazards has for over a decade been applied on summary judgment in federal courts when considering Mississippi premises liability, we do not suggest a change to that practice. At least those hazards that are similar to undamaged thresholds, curbs, and steps, which are common architectural

features for buildings and parking lots, may properly be found not to be unreasonably dangerous. We have found that these reflectors cannot on summary judgment be said to fit that category. At a trial, though, jurors should not be instructed that they must find for the defendant if they determine the hazard was usual and normally expected. Such analysis for a fact-finder is an undue and perhaps inaccurate complication once summary judgment is not found to be justified. At most, a fact-finder might be told to consider the usual and expected nature of the hazard as one of the components of deciding whether the premises were reasonably safe.

We certainly are not mandating liability. We are only saying that on remand, reasonable safety is a broad fact question, not a narrow one relating to whether a certain precedential label may be affixed to the reflectors.

The judgment of the district court is REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.