# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2011

No. 10-60330

Lyle W. Cayce
Clerk

TONY MADDOX; KATHY MADDOX,

Plaintiffs - Appellants

v.

TOWNSEND AND SONS, INCORPORATED, doing business as Sunflower
Store,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

In this premises liability suit, the plaintiffs Tony and Kathy Maddox
appeal from the summary judgment granted to the defendant, Townsend & Sons,
Inc. We REVERSE and REMAND.

## FACTUAL AND PROCEDURAL HISTORY

Twice a week for eight months, Tony Maddox made deliveries to a grocery
store owned by Townsend & Sons in Columbus, Mississippi. On September 26,
2005, he wheeled his delivery cart up a ramp to the top of the store's concrete
loading dock, situated approximately five feet off the ground. While waiting on
the dock, he leaned or sat on a chain hanging about 30 inches high between two

No. 10-60330

metal posts that supported the roof of the loading dock.  Maddox alleges he also put a portion of his weight on one of the metal posts.  The S-hook connecting the chain to the other post straightened under his weight and gave way.  Maddox fell off the dock, breaking his pelvis and suffering other injuries.

Maddox brought suit against Townsend & Sons in the U.S. District Court for the Northern District of Mississippi.  He alleged that Townsend & Sons failed to keep its premises reasonably safe and failed to warn Maddox of unknown dangers.  His wife joined the suit for loss of consortium; we will refer to them together as "Maddox" except when the context shows otherwise.  The district court granted Townsend & Sons summary judgment on all claims.  Maddox timely appealed.

## DISCUSSION

We apply the federal standard of review to the validity of a grant of summary judgment in a diversity case.  *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123 n.5 (5th Cir. 1978).  We review a district court's grant of summary judgment *de novo*.  *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 696 (5th Cir. 2010).  Summary judgment is appropriate if the pleadings and evidence pointed out to the district court show no disputed material facts and that the movant is entitled to judgment as a matter of law.  *Id.*  We view the evidence and draw reasonable inferences in the light most favorable to the non-movant.  *Id.*

The parties agree that Mississippi law applies.  That law identifies three separate and declining levels of duty that are owed to invitees, licensees, and trespassers.  *Titus v. Williams*, 844 So. 2d 459, 464-65 (Miss. 2003).  Our analysis is limited to understanding the duties towards invitees.  Also agreed is that Maddox was a business invitee.  The duties Mississippi landowners owe to business invitees were described by that state's highest court:

> While a premises owner is not an insurer of the safety of invitees,
> the premises owner does have a duty of reasonable care, to maintain

2

No. 10-60330

> its premises in a reasonably safe condition.  That duty includes not only the duty to keep its premises in a reasonably safe condition, but the duty to warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises. . . .
>
> We have set forth a two-part test requiring two separate inquiries: (1) whether the owner kept the premises reasonably safe, and (2) whether the owner warned of hidden dangers of which the owner knew or, in the exercise of reasonable care, should have known.  The breach of either duty supports a claim of negligence.

*Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199-1200 (Miss. 2008) (Dickinson, J.) (quotation marks and citations omitted).

The *Pigg* court explicitly separated the issue of whether the premises were reasonably safe from whether there were hidden dangers for which a warning was needed.  The same Supreme Court justice had earlier emphasized the issue separation in holding that the "duties – (1) to keep the premises reasonably safe, and (2) to warn of hidden dangers – are separate.  The breach of either duty supports a claim of negligence.  Each must be separately analyzed." *Mayfield v. The Hairbender*, 903 So. 2d 733, 738 (Miss. 2005) (Dickinson, J.).  The court rejected the defendant's argument that its duty was either to "make the premises reasonably safe, or warn the invitee of a dangerous condition that is not in plain view," and instead held that a property owner must comply with both duties. *Id.* at 738-39 (emphasis omitted).

Maddox claims Townsend & Sons breached both its duties when it failed (1) to keep its property reasonably safe by inspecting and replacing the S-hook, and (2) to warn Maddox about the dangerous S-hook about which it should have known.  In granting summary judgment, the district court held the property to be reasonably safe.  The court also found that the danger was known to Maddox,

No. 10-60330

and therefore Townsend & Sons had no duty to provide Maddox a warning. We examine each issue in turn.

*I.    Reasonably Safe Premises*

An owner has a duty to invitees to maintain its premises in a reasonably safe condition, but it is not the insurer of the safety of the invitees to its premises. *Pigg*, 991 So. 2d at 1199.

Among the reasons that it is appropriate to remove from the jury the issue of whether the premises were maintained in a reasonably safe condition is that the plaintiff failed to identify what specifically the landowner did negligently, or what exactly the dangerous condition was on the property. *E.g.*, *Boyd v. Magic Golf, Inc.*, 52 So. 3d 455, 460-61 (Miss. Ct. App. 2011) (affirming a directed verdict); *Blanton v. Gardner's Supermarket, Inc.*, 45 So. 3d 1223, 1231 (Miss. Ct. App. 2010) (affirming summary judgment).

Maddox has identified what he perceives to be the negligence and the nature of the dangerous condition. The S-hook on the chain is said to be the dangerous condition, and Townsend & Sons' inadequate inspections and failure to repair or replace the S-hook are the claimed negligent acts that caused his injuries. The district court rejected that the S-hook was the hazard and found the danger to be the five-foot drop. The drop being obvious, the premises were reasonably safe beyond any dispute of material fact:

> The court finds that the danger in the present case was not the chain but the height of the loading dock which was clearly visible to all on or around it. Had the chain broken on level ground, it is very unlikely that the plaintiff would have suffered any injuries at all. The presence of the chain was obviously in itself a "warning sign" to all business invitees and any other persons directing them to exercise caution near the edge of the dock. The defendant has stated that the sole purpose of the chain was to keep persons from backing off the edge of the dock. It was clearly not intended as a

seat for deliverymen waiting their turn in line, nor foreseen that deliverymen would try to use a chain as a seat.

The district court appears correct that a raised concrete platform at the back of a grocery store, constructed at a sufficient height to match the level of trucks unloading goods, would not by itself create doubts about the reasonable safety of the premises. Summary judgment appears to have been entered because of the view that no one would have perceived the chain to be completely safe to sit upon; it hung at the edge of the dock and a fall at that location obviously could cause serious injuries; liability cannot be created from the fact that the chain did not do something it was not intended to do. This is a common-sense view that jurors might accept. Nonetheless, we determine that there were fact issues under Mississippi law as to whether Townsend & Sons had an obligation to anticipate some of this kind of conduct and, having failed to do so, whether it became partially responsible for Maddox's injuries.

We start with the basics. The existence of a duty is a legal issue. *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999). We have already identified a premises owner's duty towards invitees. Whether the duty was breached by the premises owner acting unreasonably as to the condition of the property is a question of fact to be proven by a plaintiff by a preponderance of the evidence. *See Palmer v. Anderson Infirmary Benev. Ass'n*, 656 So. 2d 790, 794 (Miss. 1995). Even so, summary judgment is appropriate as to whether premises were reasonably safe if there is no dispute of material fact and the defendant shows entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

We next examine the evidence. One deponent stated that Maddox sat on the middle of the chain for five minutes before falling. Two others stated they heard Maddox say soon after the accident that it was stupid for him to have sat on the chain. One of the deponents heard Maddox say he knew the chain was not to sit on, while another heard him say it was his fault. On the other hand,

No. 10-60330

Maddox in a deposition and an affidavit swore he was next to the chain because of crowded conditions on the loading dock. He leaned simultaneously against the chain and the metal post to which the chain was attached. Without recalling precisely what happened, he heard something pop and fell to the pavement. Maddox denied making the statements about the fault being his.

Both parties presented photographs of the loading dock with notations as to where each contended Maddox had sat or leaned. Both accept that the chain released when the weight placed on it caused the S-hook to straighten.

Thus, the evidence is contested as to the relative strength of the chain and hook assembly. According to Townsend & Sons, for five minutes it withstood the test of bearing Maddox's entire weight of about 200 pounds. Maddox asserts that the test was much less demanding, as he placed only part of his weight on the chain as he also leaned on the vertical pole to which it was permanently attached. In whatever manner he used the chain, Maddox alone caused the hook attaching the chain to the opposite pole to straighten out and come free.

Maddox argues that there was enough in these contested facts to create a jury issue. We will affirm a summary judgment if "no reasonable factfinder" could have found for the party opposing judgment. *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 674 (5th Cir. 2002).[1] Therefore, we will affirm if, after determining the conditions that caused the chain to give way, no reasonable factfinder could conclude that the premises were not reasonably safe.

We examine next why we conclude that the relevant hazard was more than the obvious drop-off from the loading dock. If instead of sitting on a chain, Maddox had sat on a chair placed by the premises owner near the edge of the loading dock that then collapsed because one of the wooden legs was rotten,

---

[1] Though the federal standard of review of a summary judgment applies, the Mississippi Supreme Court has also said it determines if "[n]o reasonable factfinder" could have found a necessary fact. *Wallace v. United Miss. Bank*, 726 So. 2d 578, 591 (Miss. 1998).

No. 10-60330

Maddox might have fallen all the way down to the pavement. The potentially hidden hazard would have been the weakness of the chair leg. The obvious drop-off would not by itself end the issue of the owner's liability. In our case, the straightening of the S-hook, particularly if Maddox did not place all his weight on the chain, would not necessarily have been expected. We conclude that the hazard was more than the drop-off from the loading dock.

One of the possibly relevant facts is that the chain was a safety device. In one case, a piece of a racetrack safety railing broke off after being hit by one of the race cars; the broken piece flew into the stands and hurt a spectator. *Massey v. Tingle*, 867 So. 2d 235, 237 (Miss. 2004). The Mississippi Supreme Court affirmed summary judgment for the track owner in part because the guardrail prevented the race car, itself more dangerous than the railing, from entering the spectator area. *Id.* at 239-40. It appears that the court made an implicit finding that when a heavy, fast-moving race car collides with a guardrail, *reasonably* safe premises have been created even though some of the guardrail flies off. Moreover, the specific dangers of the racetrack that led to these injuries were obvious and known to the plaintiff. *Id.* at 240.

We do not find in *Massey* an automatic exoneration of a landowner for harm that is caused by a safety device, even when the device performed as intended. Here, Townsend & Sons stated that the purpose of the chain was to stop someone from backing off the dock when maneuvering a load. Serving the intended purpose does not control the inquiry into reasonable safety. If a premises owner used a safety device to protect invitees from one kind of hazard but in so doing created a hazard of a different kind, then a fact question would remain of whether the owner should have anticipated that risk. "The law [of premises liability as to invitees] still revolves around what the owner can anticipate or expect, or what is usual." *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 175 (Miss. 1995) (quotation marks and citation omitted).

No. 10-60330

This court recently held under Mississippi law that there could be disputes of material fact about the reasonable safety of a premises when an injury occurred due to a safety device that did not fail in its intended purpose. *Wood v. RIH Acquisitions MS II, LLC*, 556 F.3d 274, 281 (5th Cir. 2009). There, the plaintiff tripped on safety reflectors placed on the pavement of a casino's entryway. *Id.* at 275. The safety reflectors notified car drivers of the driveway's lanes, but they were not necessarily visible to someone such as the plaintiff who was exiting from the back seat of a vehicle. *Id.* at 281. We reversed the district court's grant of summary judgment, finding the determination of reasonable safety to be a jury question under Mississippi law. *Id.* at 282.

The efficacy of the *Wood* reflectors for their intended purpose of notifying drivers of the lanes was not questioned. Instead, there was a fact question of whether the premises were reasonably safe because pedestrians could stumble on the reflectors. *Id.* at 281. The presence of pedestrians was foreseeable, and the difficulty individuals would have in seeing the reflectors immediately upon disembarking from their vehicles was also a fact question. *Id.* Arguably the central purpose of the casino's porte-cochere on whose roadway the reflectors had been placed was to encourage the discharge of passengers. We held the reasonable safety of the conditions to be a fact question. *Id.* at 282.

The issue before us reduces to the question of whether the owner's duty to maintain the premises in a reasonably safe condition was satisfied despite the fact that this chain released when Maddox sat or leaned on it. One principle not supported by current Mississippi caselaw is that a premises owner is required to make every part of the property capable of withstanding every physical test a business invitee might give it. Even though Maddox proved this chain could not bear his weight, a premises owner is not liable for everything that happens on the property. That would make owners the insurer of the safety of invitees, which owners are not. *Pigg*, 991 So. 2d at 1199.

8

No. 10-60330

Reasonableness is central to the owner's obligation to invitees. The Mississippi Supreme Court elaborated on the obligations when it quoted a section of the Restatement (Second) of Torts:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Alexander v. Jackson Cnty. Hist. Soc'y, Inc.*, 227 So. 2d 291, 292 (Miss. 1969) (quoting Restatement (Second) of Torts § 343 (1965)). Accordingly, the owner is to "take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or give warning of the actual condition and the risk involved therein." Restatement (Second) Torts § 343 cmt. *d*. As already noted, maintaining reasonably safe premises and warning of hidden dangers are separate duties. *Mayfield*, 903 So. 2d at 738.

Different phrasing for the same principles has also been used: (1) the premises owner is not the insurer of safety; (2) the owner must "use reasonable care to maintain its premises . . . in reasonably safe condition for those using reasonable care for their own safety;[2] and (3) the owner is not required to anticipate or foresee unusual and improbable results as a consequence of the condition of the premises."[3] *McGovern v. Scarborough*, 566 So. 2d 1225, 1227

---

[2] We do not interpret the reference to the reasonable care by invitees for their own safety as eliminating comparative negligence principles. It might be argued, for example, that Maddox assumed the risk by sitting on this chain. The doctrine of assumption of the risk, though, has been "subsumed" into comparative negligence and does not prevent liability from existing. *Churchill v. Pearl River Basin Dev't Dist.,* 757 So. 2d 940, 943 (Miss. 1999).

[3] Both parties lightly touch on foreseeability in their briefs, but cite no authority for the relevance of the issue. The question of foreseeability is an important aspect of negligence

No. 10-60330

(Miss. 1990) (quoting *First Nat'l Bank of Vicksburg v. Cutrer*, 214 So. 2d 465, 466 (Miss. 1968)) (emphasis omitted).

These Mississippi liability principles are consistent with the approach followed in other states that require a heightened duty towards invitees:

> While any condition on the premises can conceivably cause harm to an invitee, recovery will be allowed only when the condition involves an unreasonable risk of harm to invitees. Risks are unreasonable if a reasonable person would find it necessary to take precautions against them.

Glen Weissenberger and Barbara B. McFarland, The Law of Premises Liability § 4.6, at 91 (3d ed. 2001).[4]

We conclude that the evidence created a dispute of material fact as to the reasonable safety of the premises. On summary judgment, it must be accepted that Maddox did not put his entire weight on the chain but was partly leaning on it and on the pole in order to stay out of the way of other deliverymen. The parties agree that the S-hook straightened and caused the chain to give way. Accepting that the hook was deformed by no more force than Maddox claims – force potentially no more severe than what the chain was intended to withstand in keeping workers from backing off the dock – then jurors might also accept that a reasonable inspection by Townsend & Sons would have discovered that

---

law generally. *Spotlite Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 369 (Miss. 2008). It is also a factor in a premises owner's responsibility for third-party conduct on the property. *See Corley v. Evans*, 835 So. 2d 30, 39-41 (Miss. 2003). Rarely is the term "foreseeability" used in Mississippi premises liability caselaw when there is no third party. Still, the court often refers to what a reasonable owner should "expect." *E.g.*, *Fulton*, 664 So. 2d at 175.

[4] This treatise also states that an allegedly dangerous "condition must create a foreseeable likelihood of harm to the invitee who might encounter it." Weissenberger and McFarland, Premises Liability § 4.6, at 91. It cites a Mississippi case to support this point. *See Carpenter v. Stop-N-Go Mkts. of Ga., Inc.*, 512 So. 2d 708 (Miss. 1987). There, though, a third-party's criminal acts directly caused the injury. *Id.* at 709. Older cases stated that the reasonable safety of premises was to be viewed from "the standpoint of foreseeability before the accident occurred," not in hindsight. *Paramount-Richards Theatres, Inc. v. Price,* 53 So. 2d 21, 22 (Miss. 1951).

10

the hook was too insubstantial. Jurors would also need to decide whether reasonable premises owners should expect deliverymen waiting their turn might put some force on the chain, and whether the specific dangers of the S-hook and of someone leaning partly on the chain were obvious.

The most difficult question is whether any reasonable factfinder would decide that this particular condition created an *unreasonable* risk of harm. Had Maddox sat with his full weight on this chain and only after five minutes did the S-hook straighten enough to allow the chain to become detached, the premises do not seem to us particularly unsafe. If instead the S-hook gave way without much weight being placed on the chain, such facts make a better case for the jury as to the reasonable safety of the premises.

As judges, we try to discern the outer limit of what a reasonable juror could find. Whether a chain such as this, placed in a location in which it might be reasonable to expect that waiting deliverymen will place some of their weight on it, must have any particular strength for the premises to be reasonably safe, is a question for jurors.

Summary judgment on reasonable safety should not have been granted. We now turn to the question of warnings.

## II.    *Failure to Warn*

Maddox claims that Townsend & Sons breached its duty to warn him of "hidden dangers of which the owner knew or, in the exercise of reasonable care, should have known." *Pigg*, 991 So. 2d at 1200 (citation omitted). The district court granted summary judgment on this issue, finding that Townsend & Sons "did not have a duty to warn of a danger that was as well known to the invitee as to the landowner."

As we noted earlier, the district court considered the danger to be the five-foot drop from the loading dock to the pavement. We also discussed that we see

the hazard differently. It is valid to assume the five-foot drop was the reason for most of Maddox's injuries, as a fall that did not take Maddox off the loading dock presumably would have caused far less serious injuries. There is some evidence, though, that the reason Maddox fell was an unobserved weakness in the connection of the chain to the metal post.

We return to the question of warning. To invitees, owners have both the duty to "warn of any dangerous conditions not readily apparent which the owner knew [about], or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises." *Id.* (quotation marks and citations omitted). No warning is needed for readily apparent dangers because the owner's warning would just state the obvious.[5] *See Mayfield*, 903 So. 2d at 736. Had Maddox been injured simply because the chain acted as chains are wont to do, swaying and otherwise being unstable, that hazard might be open and obvious and there would be no duty to warn. The premises may also have been reasonably safe.

It is alleged that the hazard here was more than the risk of a fall but was also a defect in the chain assembly that the premises owner should have discovered by reasonable inspection. Whether such a fact issue is relevant depends in part on whether there must be a warning of all hazards, no matter how small or large, no matter how unlikely to be encountered, before a premises owner can be said to have complied with this part of the two-part duty.

Relevant here is the previously-quoted section of the Restatement (Second) of Torts: a landowner must take steps to correct or else warn an invitee of a hazardous condition on the property that "involves an unreasonable risk of harm to such invitees . . . ." *Alexander*, 227 So. 2d at 292 (quoting Restatement

---

[5] An open and obvious condition for which no warning is needed nonetheless can leave the premises unreasonably dangerous; a fact issue there would leave resolution for a jury. *Fipps v. Glenn Miller Const. Co.*, 662 So. 2d 594, 596 (Miss. 1995).

(Second) of Torts § 343(a) (1965)).   The need for a hazard to create "an unreasonable risk of harm" is consistent with the principle that a landowner "is not required to anticipate or foresee unusual and improbable results" due to some condition on the property. *McGovern*, 566 So. 2d at 1227. This concept of unreasonable risk can be seen as giving a definition to "danger" or "hazard." Here, among the questions is whether there was an unreasonable risk of someone sitting on this chain that should have been anticipated.

Based on the summary judgment evidence, there are facts to support that the cause of Maddox's injuries was that the S-hook straightened due to Maddox's weight.  Whether the possibility that the S-hook was the weak link in the entire chain assembly should have been discovered by Townsend & Sons, and whether that created an unreasonable risk of harm for which warnings were needed because, for example, the chain was convenient to the place deliverymen would wait their turn, are fact questions not resolvable here.  Finally, what degree of fault should be assigned to Maddox for his own decision to lean or sit on a chain adjacent to a five-foot drop may also be considered by the jury as a function of comparative negligence.  *See Mayfield,* 903 So. 2d at 737.

Summary judgment was inappropriate on the issue of warnings.

REVERSED and REMANDED.

13